George W. Stoker, Appellant, v. Tri-City Railway Company, Appellee.

**NEGLIGENCE:** Acts Constituting Negligence—Failure to Sound
1, 3 Gong or Maintain Lookout at Street Intersections. Evidence relating to the failure of a street car motorman to sound the gong at, and to maintain a lookout upon approaching, a street intersection, and plaintiff's conduct in relation to the resulting collision, reviewed, and held to present a jury question on the issue of the negligence of both plaintiff and defendant.

**NEGLIGENCE:** Imputed Negligence—Co-employees with Separate
2 Duties. Co-employees, in using *one* instrumentality of the master *in the performance of separate and distinct duties,* are not engaged in a common enterprise in such sense that each is the agent, and charged with the negligence, of the other.

PRINCIPLE APPLIED: Plaintiff and a truck driver were both independently employed by an employer who was engaged in the manufacture of ice cream. Plaintiff's specific duty was to sell the ice cream. The employer furnished a truck with which to make deliveries. The truck driver's specific duty was

to operate the truck when the ice cream was delivered. Plaintiff accompanied the driver, and rode upon the truck when deliveries were made. Plaintiff would tell the driver the location of the persons who had bought ice cream, and in some degree would suggest or give direction as to what route to take to reach the points of delivery, but never assumed any other control over the actions of the driver. The truck, on one occasion, came into collision with a street car. *Held*, the co-employees were not engaged in a common enterprise, in the sense of the law of imputed negligence.

**NEGLIGENCE:** Acts Constituting Negligence—Failure to Sound
1, 3 Gong or Maintain Lookout at Street Intersections.

*Appeal from Scott District Court.*—A. J. HOUSE, Judge.

NOVEMBER 16, 1917.

REHEARING DENIED FEBRUARY 15, 1918.

ACTION for damages on account of injuries resulting from the collision of a motor truck with one of defendant's street cars. The court directed a verdict for the defendant. Plaintiff appeals.—*Reversed.*

*Ely & Bush,* for appellant.

*Lane & Waterman,* and *Cook & Balluff,* for appellee.

STEVENS, J.—I. The injuries of which plaintiff complains were received by him as the result of a collision between one of defendant's street cars and a motor truck at the intersection of Farnam and Laurel Streets in the city of Davenport. Farnam Street in that city extends north and south, and Laurel Street, east and west, intersecting with, but not crossing, Farnam Street.

1. NEGLIGENCE: acts constituting negligence: failure to sound gong or maintain lookout at street intersections.

On the occasion in question, the driver of the auto truck and plaintiff, who were co-employees of the Bell-Jones Company, wholesale dealers in ice cream, were engaged in delivering tubs of ice cream to customers in various parts

of the city. The truck was a large, heavy one, loaded with tubs containing cans filled with ice cream, with ice placed around the cans inside the tubs. The ice cream appears to have been covered with a tarpaulin. Plaintiff was the sales-man of the Bell-Jones Company, and he informed the driver of the truck where the respective parties to whom cream was to be delivered were located, and perhaps, to some extent, gave directions as to the route to be followed in arriving at the various places where ice cream was to be left. Plaintiff claims to have had nothing to do with the operation or control of the truck; that his business was to sell and deliver the ice cream to the customers; that both the driver and plaintiff were employed by the Bell-Jones Company; that the plaintiff had nothing to do with the selection or employment of the driver, or other control over him than as above stated.

It appears from the evidence that, while traveling west on Laurel Street, approaching the intersection of Farnam Street, plaintiff saw the street car coming from the north, some distance from the intersection. The evidence does not show whether the truck was proceeding on the north or the south side of Laurel Street, but it is claimed by plaintiff that there was not room to turn north from Laurel onto Farnam Street without passing upon the track of defendant, if the truck was on the north side of Laurel Street at the time of making the turn. The curb at the southeast corner of the intersection was curved. The seat upon which the driver of the truck was sitting was elevated, and he was probably prevented, to some extent, from observing the approaching street car, by overhanging branches of trees. The driver, upon reaching the intersection, probably partly turned the truck to the north; but plaintiff's testimony is not quite clear on this point. From the time plaintiff saw the approaching street car until some time later, he was engaged in covering the ice cream with the tarpaulin, and

claims not to have further observed the movement of either the street car or the auto truck until immediately before, or about the instant, the driver jumped from the truck on the right-hand side, and abandoned the same.   At that time, plaintiff was upon the seat of the truck.   The record is not clear when he got upon the seat, or when he ceased working with the tarpaulin, and saw the approach of the street car, and realized that there was danger of a collision; but plaintiff testified that, immediately after the driver jumped from the truck, he took hold of the steering wheel and turned it to the right, for the purpose of throwing the hind wheel of the truck against the curb, and preventing the accident.   However, the front left wheel of the truck collided with the front steps of the street car, causing the load in the wagon to be shoved forward onto plaintiff, breaking some of his ribs, and otherwise severely injuring him. Plaintiff testified that the motorman on the street car was looking to the west, and evidently did not observe the approach of the truck or know of its presence until the collision actually took place.

The court, upon motion of the defendant, directed a verdict in its favor.   The grounds of defendant's motion were: (a) That the evidence failed to show that plaintiff exercised due care; (b) that the evidence showed he was negligent; and (c) that the driver of the truck was negligent, was the agent of plaintiff; and that both were negligent in a common employment of which the plaintiff had chief charge, and the driver's negligence should be imputed to plaintiff.   The motion was sustained by the court upon the second ground, and upon the further ground, not stated in the motion, that the defendant was not shown to have been negligent.

Four propositions are presented upon this appeal:

1.   Was there sufficient evidence offered of negligence upon the part of the defendant to require submission of that question to the jury?

2. Did the evidence offered show negligence upon the part of the driver of the auto truck?

3. If so, was such negligence imputed to the plaintiff?

4. Was plaintiff guilty of negligence independent of the claimed negligence of the truck driver which contributed to his injury?

There was evidence offered from which the jury might have found that the street car was approaching the intersection at the rate of about fifteen miles per hour; that the motorman in charge was not observing the intersection, but was looking in a direction opposite to that from which teams, motor vehicles, or pedestrians would come from Laurel Street onto Farnam; that he continued to look to the west, conversing with a passenger, until the collision. The grounds of negligence alleged in plaintiff's petition, among others, were that the motorman was negligent in looking in the opposite direction, and in failing to observe the approach of the truck and the peril in which plaintiff was placed by the attempt of the driver of the truck to turn from Laurel onto Farnam Street.

It has been repeatedly held by this court that it is the duty of the motorman in charge of a street car, upon approaching an intersection or crossing, to keep a careful lookout ahead and to the right and left, in order that he may observe the approach of teams, motor vehicles, or pedestrians, in time to prevent collision and injury thereto. The rule, as stated in *Wilflin v. Des Moines C. R. Co.*, 176 Iowa 642, is as follows:

"The motorman was bound, under the law, to keep a lookout for vehicles on the street. If he sees a vehicle on the track ahead, or in the exercise of ordinary care should have done so, it is his duty to bring the car under such control as to avoid a collision, if the driver of the vehicle shall not leave the track. The rule is applicable to all vehicles; and, whenever overtaking another in its line of progress,

and a possible obstacle in the way, a proper regard for the
rights of others requires that the car be reduced to such
control that it may be immediately brought to a standstill,
if necessary."

*Engvall v. Des Moines City R. Co.*, 145 Iowa 560; *Fisher
v. Cedar Rapids & M. C. R. Co.*, 177 Iowa 406; *Hollgren v.
Des Moines City R. Co.*, 174 Iowa 568.

Negligence was also predicated upon the alleged failure
of the motorman to sound the gong before crossing the in-
tersection, and failing to have the street car under proper
control.   If the driver of the auto truck knew of the pres-
ence of the street car before attempting to turn onto Far-
nam Street, and same was in plain view, the failure to
sound the gong, even though negligent, could not be said
to have been the proximate cause, in that event, of the in-
jury; and it would not, perhaps, be material whether the
same was sounded or not.   The evidence is not very clear
that the street car had reached the point where it was re-
quired by the ordinance to sound the gong; but these ques-
tions, together with the alleged negligence of the defendant
in failing to keep proper lookout and watch for the auto
truck, were questions of fact for the jury, and we think
there was sufficient evidence of defendant's negligence to
require the submission of this question to the jury.

II.   We pass over the question of the
claimed negligence of the driver, for the
2. NEGLIGENCE:
imputed neg-
ligence: co-    reason that we reach the conclusion that his
employees with
separate duties.   negligence cannot be imputed to the plain-
tiff, and it is unnecessary to consider the
same.

As above stated, plaintiff and the driver of the truck
were co-employees of the Bell-Jones Company, each having
separate and distinct duties to perform.   The motor truck
was used as a means of conveying the ice cream to the cus-
tomers to whom plaintiff, as salesman, had sold it; and in

his capacity as salesman, he was acting as an employee of the company. The delivery of the ice cream to the customers was for the benefit, and under the direction, of the company. It furnished the auto truck and employed the driver thereof. With these matters, plaintiff had nothing to do. He exercised no control over the driver of the auto truck, except to advise him upon what streets the customers were located, and, perhaps, to suggest the route of travel thereto. Plaintiff claims never to have operated the truck, or paid any attention to the operation thereof by the driver. They were not engaged in a common enterprise. They were co-employees, engaged in performing their respective duties, and using the instrumentalities furnished by the employer for that purpose. There was no sense in which the driver of the automobile was the agent of the plaintiff. The alleged negligence of the driver could not, therefore, be imputed to the plaintiff. *Carpenter v. Campbell Auto Co.*, 159 Iowa 52; *McKernan v. Detroit Citizens' St. R. Co.*, 138 Mich. 519 (101 N. W. 812); *Gray v. Philadelphia & R. R. Co.*, 24 Fed. 168; *Seaman v. Koehler*, 122 N. Y. 646 (25 N. E. 353); *Shultz v. Old Colony St. R. Co.*, 193 Mass. 309 (79 N. E. 873); *Lawrence v. City of Sioux City*, 172 Iowa 320; *Withey v. Fowler Co.*, 164 Iowa 377; *Bailey v. Jourdan*, 46 N. Y. Supp. 399; *Grace v. Minneapolis & St. L. R. Co.*, 153 Iowa 418.

3. NEGLIGENCE: acts constituting negligence: failure to sound gong or maintain lookout at street intersections.

III. The only remaining question necessary for our consideration is: Was plaintiff guilty of negligence, independent of the claimed negligence of the truck driver which contributed to his injury? The argument of counsel for appellee is based, not so much upon the doctrine of imputed negligence, as upon the claim that plaintiff was himself guilty of contributory negligence. The basis of this argument is that plaintiff saw the car approaching before the truck had entered the danger zone,

and could have insisted upon its being stopped before reaching Farnam Street, or he could have requested the driver to slow down, and avoid reaching the point where a collision was possible; that he was sitting upon the seat, saw the car, and could have prevented the truck from running into the street car. There is some force in the argument of counsel at this point; but we are not passing upon the ultimate question of fact as to whether the plaintiff was or was not negligent, but upon the question whether the evidence of negligence upon his part was so conclusive that this court must say, as a matter of law, that he was negligent.

The plaintiff claims to have been engaged in covering the ice cream with a tarpaulin, and that, as soon as he observed the danger, he sought to do what occurred to him, to prevent the collision. After the driver jumped from the truck, plaintiff claims to have caught hold of the steering wheel and endeavored to turn the car to the right, away from the street car; but the collision occurred before he could get it out of the way. The driver's negligence, if shown, did not wholly relieve the plaintiff from responsibility, or the duty of using reasonable care to prevent the accident. He was bound, after the emergency arose, to exercise such care and prudence as a reasonably careful person, placed under like circumstances and confronting a like emergency, would use to prevent the accident, and, to this end, should have employed the means reasonably at hand and available to him for that purpose. *Hubbard v. Bartholomew,* 163 Iowa 58; *Thompson v. Los Angeles & S. D. B. R. Co.,* 165 Cal. 748 (134 Pac. 709) ; *United R. & Elec. Co. of Baltimore v. Crain,* 123 Md. 332 (91 Atl. 405) ; *Senft v. Western Maryland R. Co.,* 246 Pa. 446 (92 Atl. 553) ; *Wachsmith v. Baltimore & O. R. Co.,* 233 Pa. 465 (82 Atl. 755) ; *Lynn v. Goodwin,* 170 Cal. 112 (148 Pac. 927) ; *Brommer v. Pennsylvania R. Co.,* 179 Fed. 577.

The record is a trifle obscure as to exactly when plain-
tiff discovered the danger of the collision and what trans-
pired thereafter, except the abandonment of the truck by the
driver, and the claimed attempt by plaintiff to turn the
truck away from the street car, to avoid the collision.    Dur-
ing this time, according to plaintiff's testimony, the motor-
man in charge of the street car was not keeping proper
watch or lookout ahead, but was looking in an opposite
direction from which travel came from Laurel Street upon
Farnam.    The jury might have found that the car was be-
ing driven at a speed approximating fifteen miles per hour,
and was very near, if it had not reached, the north line of
the intersection; and that the motorman, had he kept proper
lookout ahead, would have seen plaintiff's peril, and so far
reduced the speed of the car that same could have been
stopped in time to prevent the accident.

In our opinion, the evidence falls short of conclusively
showing negligence upon the part of plaintiff contributing
to the injury, and reasonable minds, seeking to know the
truth, might differ in regard thereto.    We cannot say, as a
matter of law, that he failed to use all the means available
to him to steer the truck away from the street car after the
driver left same, or that, prior thereto, he did not use rea-
sonable care, under the circumstances, for his own safety.
As we view the record, the learned trial court committed
error in directing a verdict for the defendant, and should
have submitted the case to the jury.

For the reasons pointed out, the judgment of the lower
court is reversed, and cause remanded for new trial.—*Re-
versed and remanded.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.