Carl HARTWIG, Administrator of the Estate of Perry Hartwig, Deceased, Appellee,

v.

Clarence OLSON, Appellant,

Highway Surfacers, Inc., Defendant on Cross Petition.

No. 52802.

Supreme Court of Iowa.

April 9, 1968.

Westfall, Laird, Burington, Bovard & Heiny, Mason City, for appellant.

Miller, Pearson & Gloe, Decorah, for appellee.

MOORE, Justice.

This is an action for the wrongful death of Perry Hartwig, a highway resurfacing employee, struck while working by a car owned and driven by defendant Clarence Olson. Defendant has appealed from judgment on verdict of $28,000 for plaintiff. Defendant assigns nineteen errors, two on rulings on evidence, two on rulings on motions to withdraw portions of pleadings and fifteen on requested and given jury instructions.

Highway Surfacers, Inc., Hartwig's employer, was made defendant on cross-petition. It was granted a continuance and took no part in the trial and is not a party to this appeal. For clarity we will refer to Perry Hartwig as plaintiff and Olson as defendant.

On September 4, 1965 about 6:30 a. m., plaintiff and two fellow employees, Lindsay and Grady Walls, brothers, were operating a cutting machine on the south half of the highway at a place about seven miles north and a half mile east of the town of Thompson in Winnebago County. Defendant approached from the west, struck the machine and the three men. Hartwig was killed instantly and the Walls brothers were seriously injured.

Highway Surfacers, Inc., the employer, had entered into a contract with the Iowa Highway Commission to blacktop approximately nine miles of the county road running east and west. On September 3rd the south half of the blacktop had been completed for some distance east and west of the place of the accident. The north half had been completed from the eastern limit of the job to a few feet west of the place of the accident. About 7:30 that evening the crew ceased working and their equipment was moved to the Bruns farmyard just south of the scene of the accident.

On the morning of the accident plaintiff and his fellow workmen arrived at the Bruns farm about 6 a. m. They were instructed by a foreman to cut a header on the north side and to take a sample from the south lane of the blacktop which had been laid the day before.

Plaintiff drove his employer's 1958 Chevrolet pickup to the north lane a few feet east of where resurfacing of that lane had been completed. The headlights were on. Plaintiff's witnesses testified they were on dim. Defendant testified they were on bright and shining in his eyes as he came from the west.

Plaintiff and the Walls brothers then moved the cutter to a position in front of the parked truck where they cut a header. The cutting machine is on wheels, pushed by workmen and weighs about 300 pounds. Its cutting blade is propelled by a 4½ horsepower gasoline motor. Cutting a header means sawing off the tapered end of the blacktop preparatory to resuming blacktopping. After cutting the header the men moved the machine to the south lane to cut a sample.

As they were cutting the sample, plaintiff was standing on the west side of the machine looking down and controlling the cutting blade. No artificial light was in use. As this was being done one Walls was at the north and the other at the south end of the machine. They and the cutter were hit while in said respective positions.

The morning of the accident was overcast and hazy. Defendant was driving from his home in Buffalo Center to his place of employment at Keister, Minnesota. He did not ordinarily take this road but had done so several times since the blacktopping was started in June. He had driven west over the road the night before and testified no workmen were then on it. He estimated the time as 7 p. m. He

observed some strings or directional lines and of course was aware of the resurfacing.

West of the accident scene is a valley with an incline of approximately 11 feet. Defendant was driving between 50 to 60 miles per hour with his bright lights on. He testified he lowered them when he observed the lights of the pickup but those lights remained unchanged. He reduced his speed, looked ahead and slammed on his brakes when he first saw the men and the cutting machine. The skid marks from his Oldsmobile extended 97 feet, 57 feet before the point of impact and 40 feet beyond it.

■ I. On cross-examination of a witness for plaintiff and by an offer of proof by one of his witnesses, defendant attempted to show there were no signs of any kind warning the public there was construction work ahead, there were no slow or men-working-ahead signs, barricades, lights, reflectors, flagman, flares or warning of any kind of the presence of the cutter or the three workmen.

Defendant's offer of proof by the testimony of a highway patrolman included: "A. What did you find as to whether or not there were any fusees or reflectors or lights of any kind in that area? A. I found nothing in that area. Q. Did you find any signs in the area warning a motorist to reduce his speed in that immediate area? A. No, I did not. Q. And what about barricades, were there any barricades out there? A. Not that I can recall."

Plaintiff's objections to each of these and all like questions were: "plaintiff's decedent was under no duty or obligation imposed upon him by law, by any rules, regulations or statutes with reference thereto, and it is getting into possible negligence, if any, of someone else, and this decedent had no obligation or connection with any signs, any possible negligence by an employer or fellow employee of decedent Hartwig is not imputed or chargeable to him or plaintiff in this action, and the decedent Hartwig was exempt from the provisions of Chapter 321, section 321.-233 of the Code; it is incompetent, irrelevant, immaterial."

The trial court sustained these objections and thus defendant was prevented from showing the surrounding circumstances along the highway just west of the place of the accident. Defendant asserts this consistent ruling of the trial court was prejudicial error. We must agree.

If this evidence went only to imputation of negligence of plaintiff's employer or a co-employee then the trial court's ruling would be correct. Such negligence, if any, would not be imputed to plaintiff. Pappas v. Evans, 242 Iowa 804, 48 N.W.2d 298; Stoker v. Tri City Railway Company, 182 Iowa 1090, 165 N.W. 30, L.R.A.1918F, 515; McBride v. Des Moines City Ry. Co., 134 Iowa 398, 109 N.W. 618; 38 Am. Jur., Negligence, section 235; 65A C.J.S. Negligence § 162.

However, the general surrounding conditions, particularly along the highway immediately west of the place of the accident, were material on the question of defendant's negligence, claimed legal excuse, right to assume and plaintiff's ngligence which defendant alleged was a proximate cause of the accident. Plaintiff's specifications of negligence against defendant included allegations he was negligent in driving his car at a greater speed than was reasonable, having due regard to the traffic, surface and width of the highway and the conditions then existing, failing to keep a proper lookout, failing to have his car under control and failing to exercise due care under the existing circumstances and conditions. Such questions and answers as set out above in defendant's offer of proof should have been allowed.

■ 8 Am.Jur.2d, Automobiles and Highway Traffic, section 934, page 482 states: "In an action growing out of a motor vehicle accident, any evidence of the

conditions leading up to and surrounding the accident which will throw light upon the conduct of the parties and the care, or lack of care, exercised by them, is, as a general proposition admissible." 61 C.J.S. Motor Vehicles § 516 n, page 260, states: "Ordinarily, evidence of the condition of the road or street, the presence and location of directional or warning signs, signals, marking, or devices, and other physical conditions existing at the scene of the accident or collision is admissible." See also Blashfield Cyclopedia Automobile Law and Practice, section 6174.

■ Whether a particular speed of a motor vehicle is excessive in violation of Code section 321.285, the reasonable speed statute, depends entirely on the surrounding circumstances. Campbell v. Martin, 257 Iowa 1247, 1252, 136 N.W.2d 508, 511, and citations.

■ Plaintiff argues defendant's counsel should have stated what he expected to prove and made the materiality of the evidence appear. Perhaps if materiality had been specifically pointed out we would not have the problem now presented under this assigned error. Under the record we are not persuaded counsel was required to do so. The rule is that when it is apparent upon the face of the question what the evidence sought to be introduced is, and that it is material, this is sufficient. But when this is not apparent, then the party seeking to introduce the evidence is required to state what he expects to prove, and thus make its materiality appear. Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303, 313 and citations. Here defendant's offer of the questions and answers was sufficient to indicate the materiality of the evidence.

■ II. On September 4, 1966, exactly one year after the accident, Grady Walls, a photographer, and others went to the place of the accident, parked an automobile where the pickup had been standing and several photographs were taken from

the west. One shows a man standing near the south side of the car holding a card on which appears "6.30". Witnesses, including the photographer, identified this and other photographs taken before, at and after 6:30 a. m. that morning. Each was given thorough cross-examination of all details surrounding the conditions under which these photographs were taken. All agreed it was not overcast on this morning. Grady Walls testified they accurately represented what he saw at the time they were taken, including the light conditions and that they fairly and accurately represented the terrain, the roadway and the area of the scene of the accident with the exception of a few conditions pointed out by him.

Defendant contends his objections to these photographs should have been sustained and the trial court erred in admitting them as exhibits. We do not agree.

■ The mere fact photographs are taken at a time different from that in question does not render them inadmissible if witnesses are able to verify them as substantial representations of the conditions as they existed at the time in question. As photographs are often unobtainable at the scene of the accident and at the time thereof the only practical rule is that changes must not be such as to destroy the substantial identity and that changes, whatever they may be, should be pointed out to the jury. Englund v. Younker Brothers, Inc., 259 Iowa 48, 142 N.W.2d 530, 532; Elkin v. Johnson, 260 Iowa 46, 148 N.W.2d 442, 446.

■ The admissibility of photographs rests largely in the discretion of the trial court and we will not interfere with the trial court's ruling except upon a clear showing of abuse of discretion. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 719, 720, 107 N.W.2d 85, 93, and citations; Englund v. Younker Brothers, Inc., supra.

Our study of the record and the several photographs admitted in evidence, including those which were posed, fails to disclose an abuse of discretion by the trial court.

The weight to be given them was for the jury.

III. As required by Code section 619.17 defendant's answer, as an affirmative defense, alleged plaintiff was guilty of negligence which was a proximate cause of the accident. It sets out specifications of negligence a through *o*. On plaintiff's motion the trial court struck specifications f through *o*. Defendant contends the court erred in striking specifications h, j, *l*, n and *o*.

Specifications h and *l* in substance charged plaintiff with negligence in working on the south half of the blacktop when he knew or should have know there were no signs, warnings, barricades, lights, lanterns, fusees or flagmen warning oncoming traffic of the presence of the repairmen and equipment blocking the south half of the blacktop.

Code section 321.233 provides: "The provisions of this chapter shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

Thus road workers are exempt from the laws of the road as set out under the many sections of Chapter 321. Regarding what is now section 321.233 we said in Rebmann v. Heesch, 227 Iowa 566, 577, 288 N.W. 695, 700: "While said section does exempt those referred to therein, from certain requirements specified in the chapter, it does not release such person from the use of ordinary care nor absolve them from their negligence, nor was it ever, in our judgment, so intended by the legislature." Like statements are made in Wamser v. Bostian, 230 Iowa 792, 796, 298 N.W. 860, 862. The North Dakota court in considering an identical road workers' exemption statute in Quam v. Wengert, N.D., 86 N.W.2d 741, holds the worker's duty of care is not the same as that of an ordinary pedestrian but the worker is required to exercise reasonable care under the circumstances, including the fact he was required to give attention to his work.

With the duty owed by a road worker in mind we turn to the question whether the substance of specifications h and *l* was included in the court's jury instructions. We believe it was. As to plaintiff's negligence, the court submitted failure to keep a proper lookout, failure to give a proper warning of his presence and that of the cutter upon the south half of the blacktop, parking or permitting to be parked a vehicle upon the north half of the blacktop approximately opposite the place of work, working on the south half of the blacktop at a place approximately opposite the parked vehicle and failure to remove himself from a place of danger when he knew or should have known of the presence of defendant's oncoming car. We find no prejudicial error in striking specifications h and *l* of defendant's answer.

IV. Specification j charged plaintiff with negligence in failing to comply with rules and regulations of the highway commission in connection with erection of signs, warnings, barricades, lights, lanterns, fusees and flagmen to warn oncoming traffic of the presence of repairmen and equipment on the south half of the blacktop.

The record discloses plaintiff was one of several workmen on the resurfacing job. There is no allegation or evidence he had been assigned any duty to post signs, warnings or flagmen. As we have pointed out in Division I, negligence, if any, of plaintiff's employer or a co-employee is not imputed to him. The trial court did not err in striking specification j. This conclusion is well supported by Quam v. Wengert, supra, N.D., 86 N.W.2d 741.

V. Specification n alleged plaintiff was negligent in operating a piece of road machinery upon a public highway not

equipped with two red danger signal lanterns or lights as required by Code section 321.399.

Specification *o* alleged plaintiff was negligent in operating a piece or road machinery upon a public highway before sunrise without a signal light on the front and rear as required by Code section 321.400. Sunrise was at 6:30 a.m., Central Daylight Saving Time on the day of the accident.

The requirements of sections 321.399 and 321.400 are specifically limited to tractors, road graders, road drags and other road machinery operated by fuel, kerosene or coal. The cutter used at the time of this accident was nothing more than a large power saw on wheels. Its blade was propelled by a small motor but it was moved by workmen pushing it. We are not persuaded the provisions of sections 321.399 and 321.400 applied to this cutter. It must also be observed plaintiff was only a workman and there is no allegation or evidence he was charged by his employer with maintenance of the cutter. We hold it was not prejudicial error to strike specifications n and *o*.

██ VI. After the evidence was closed and defendant's motion for directed verdict was denied he then moved to withdraw certain specifications of negligence alleged in paragraph 6 of plaintiff's petition. Subparagraphs e, g and h which the court refused to withdraw each alleged defendant failed to exercise due care to avoid colliding with Hartwig. In Sparks v. Long, 234 Iowa 21, 28, 11 N.W.2d 716, 720, we say: "Another pleaded ground of negligence was that defendant 'failed to exercise due care to avoid colliding with plaintiff.' This is not a specific charge of negligence. This is a general charge, and too general to warrant its submission as a charge of negligence."

██ The trial court's instruction 1 included an exact copy of the nine specifica-

tions of negligence alleged in paragraph 6 of plaintiff's petition, including e, g and h. The trial court apparently did not intend to submit these three specifications to the jury as no instructions were given in reference thereto. Specific instructions regarding the other six specifications were given. Prejudicial error resulted, however, as this statement was made in instruction 11: "If you find that the defendant was quilty of any acts of negligence alleged in plaintiff's petition and that said negligence was a proximate cause of the accident, then the plaintiff is entitled to recover against the defendant." Specifications of negligence not submitted to the jury should not be included in the statement of issues unless it is clearly stated they are withdrawn from jury consideration.

VII. Defendant has assigned separate errors based on the trial court's refusal to give his requested instructions 1, 4, 5, 5a, 7, 8 and 13.

██ Defendant's requested instruction 1 deals with stopping, parking and leaving a vehicle upon a highway outside a business or residence district and the charge of negligence against plaintiff for violation of his alleged duty. Instruction 10 included the substance thereof.

Requested instruction 4 refers to the standard of care governing the conduct of motor vehicle operators and other using the highway. Plaintiff-appellee's brief refers to it as "a long abstract dissertation on negligence and an effort to define the standard of care required of the parties." The substance thereof was given by the court in instruction 4, the third paragraph of instruction 10 and the second paragraph of instruction 15.

No prejudicial error resulted in the trial court's refusal to give defendant's requested instructions 1 and 4. It is sufficient if the substance of requested instructions is included in those given the jury. Shank v.

88

Wilhite, 256 Iowa 982, 985, 129 N.W.2d 662, 664, and citations.

■ VIII. Requested instruction 5 embodies both requested instructions 5 and 5a. It refers to plaintiff's duty regarding right of way and keeping a proper lookout and includes: " * * * he was bound to yield the right of way as that phrase is defined herein to vehicles upon the highway * * *. He was bound to keep a lookout to avoid injury and damage to himself as well as to others who may at the same time be lawfully using the highway."

As a highway construction worker plaintiff was not bound to keep a constant lookout or to yield the right of way. A worker on the highways is not charged with the same degree of care as an ordinary pedestrian. Plaintiff was required to exercise only such reasonable care and observation for his safety as was under the circumstances called for. Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 94, 277 N.W. 580, 583, 281 N.W. 504; and citations; Quam v. Wengert, N.D., 86 N.W.2d 741, 747; 60 C.J.S. Motor Vehicles § 391, page 956. We recognized the same rule in Pappas v. Evans, 242 Iowa 804, 48 N.W.2d 298, where a railroad worker was injured by a motor vehicle.

The trial court did not err in refusing requested instructions 5 and 5a in the form submitted because they did not correctly state the applicable law. Faatz v. Sullivan, 199 Iowa 875, 200 N.W. 321, 324.

IX. Defendant on trial attempted to prove the highway commission had adopted rules and regulations for posting signs at and near highway construction projects and that plaintiff's employer had agreed to comply with the requirements of the rules. The trial court sustained plaintiff's objections to such proof apparently on the theory it was an attempt to impute negligence to plaintiff.

Requested instruction 7 relates to sign requirements and defendant's right to as-

sume they would be posted if construction workers and equipment were upon the highway until he knew or should have known of their presence.

Requested instruction 8 relates to plaintiff's knowledge no signs were posted as a circumstance to be considered on the question of plaintiff's alleged negligence.

Requested instructions 7 and 8 were not supported by the evidence. We have however held in Division I evidence of the absence of warning signs should have been admitted. On a retrial a different record in this regard may be made and an instruction covering the substance of requested instructions 7 and 8 may be required.

X. Defendant's requested instruction 13 charged plaintiff with negligence for violation of sections 321.399 and 321.400. As we have pointed out in Division V they have no application to the cutter used by plaintiff. Refusal of requested instruction 13 was correct.

XI. Defendant objected to instructions 9, 10, 11, 12, 13, 14, 15, 16 and 19 and assigns error as to the giving of each. Our holdings already stated as to the applicable law answer most of the questions raised by defendant. We shall discuss only those instructions which present additional problems.

■ It is the trial court's duty to instruct with reasonable fullness on the pleaded issues which have evidentiary support. A mere abstract definition of the law having no application to the facts is insufficient. The giving of instructions which are conflicting and confusing is reversible error. Kuehn v. Jenkins, 251 Iowa 718, 730, 731, 100 N.W.2d 610, 617, 618; Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391. From a study of all the instructions we conclude they are not vulnerable to defendant's attack under the above stated principles.

XII. We are unable to determine whether instruction 16 with reference to legal

excuse was given or withdrawn after objections were made thereto. The evidence on retrial will no doubt include much regarding surrounding circumstances. For these reasons we find it unnecessary to discuss defendant's contentions regarding instruction 16.

XIII. Instruction 19 includes this: "The measure of damages for the death of Perry Hartwig will be the present worth or value of the estate which he would reasonably be expected to have saved and accumulated as a result of his own efforts from the date of his death, if he had lived out the term of his natural life. This is not the sum which, when placed at interest would yield an amount equal to the income of the decedent at the time of his death, but as heretofore stated, it is that amount which estimated at its present value, under all the circumstances as disclosed by the evidence, would have come to his estate from the date of his death to the end of his natural life."

Defendant argues "would have come", as found near the end of the paragraph, would logically be interpreted to mean plaintiff's income. We do not agree. We think this complaint is hypercritical. It seems clear to us, when read with the entire instruction, the quoted part means what would have come to the estate in the way of accumulations if Hartwig had lived.

Of course all instructions should be considered together and interpreted as a whole. Rosin v. Northwestern States Portland Cement Co., 252 Iowa 564, 576, 107 N.W.2d 559, 565, 566 and citations.

We find no reversible error under defendant's assignments of error to the instructions given.

For the reasons stated this case is

Reversed and remanded.

All Justices concur.