Robert H. VAN HORN and Phyllis
Van Horn, Appellees,

v.

IOWA PUBLIC SERVICE COMPANY, and
Equitable Life Assurance Society of
the U. S., Appellants.

Vivian WILLEY, Bob B. Bish and
Barbara Bish, Appellees,

v.

IOWA PUBLIC SERVICE COMPANY,
Appellant.

Carney H. CONNER and Margaret Conner,
Appellees,

v.

IOWA PUBLIC SERVICE COMPANY and
Federal Land Bank of Omaha,
Appellants.

Charles T. CONNER and Alma Conner,
Appellees,

v.

IOWA PUBLIC SERVICE COMPANY, Pru-
dential Insurance Company of America,
Metropolitan Life Insurance Company, Ap-
pellants.

Louie B. CONNER and Esther L. Conner,
Appellees,

v.

IOWA PUBLIC SERVICE COMPANY, Pru-
dential Insurance Company of
America, Appellants.

Warren CONNER and Madge Conner,
Appellees,

v.

IOWA PUBLIC SERVICE COMPANY, a
corporation, and Equitable Life Insur-
ance Company of Iowa, Appellants.

Lillian B. HEBBEL and Edith E. Hebbel,
Appellees,

v.

IOWA PUBLIC SERVICE COMPANY, a
corporation, the Federal Land
Bank of Omaha, Appellants.

Luella S. EVARTS, Donald W. Pratt and
Pauline E. Pratt, Ralph C. Sherwin and
Ruth E. Sherwin, Appellees,

v.

IOWA PUBLIC SERVICE COMPANY,
Appellant.

No. 54078.

Supreme Court of Iowa.

Dec. 15, 1970.

Bruce M. Snell, Jr., Ida Grove, for appellant.

George H. Clark, Ames, for appellees.

MASON, Justice.

Eight appeals by Iowa Public Service Company from ascertainment of damages made by the district court in appeals by landowners to that court from assessment of the sheriff's commission in condemnation proceedings have been consolidated by permission for review in this court.

Appellant will be referred to as defendant.

Defendant, with the approval of the state commerce commission, chapter 489, Iowa Code, 1966, exercised power of eminent domain to obtain right-of-way for construction and maintenance of electric transmission line in Glidden and Grant townships in Carroll county. Commissioners were appointed, chapter 472, and made reports separately assessing damages to lands or interests involved. Eight owners of nine tracts, being dissatisfied with the awards made by the sheriff's commission, appealed to the district court. A jury being waived in each case, damages were ascertained by one member of the Carroll district court in five cases heard by him and damages were determined in three tried before another judge, Code section 472.23.

I. Farms involved lie within an area four miles long east and west and one mile wide. The first three appeals stemming from the Van Horn, Bish and Carney Conner condemnations were consolidated and first tried in the district court since each consisted of four 40-acre tracts in a line north and south, a mile long and 80 rods wide. Defendant condemned an easement 91 feet in width along the east and west half-section line (the dividing line between the north and south eighties) of each of these farms and erected two-pole structures, built like an "H," approximately 660 feet apart for its lines and facilities with

necessary overhang of conductors and line clearances.

On the Van Horn tract two H-pole structures were erected, one in the fence line, the other in the center of the farm, east and west and north and south. The Bish farm is crossed in the same manner with one H-pole structure in the east fence line and the other in the center. In the Carney Conner tract the condemnation procedure proposed two H-pole structures on his land but only one was erected, the right to the other location was abandoned during trial. See Fanning v. Mapco, Inc., a corporation, 181 N.W.2d 190 (Iowa, filed November 10, 1970). A county drainage ditch runs through the Carney Conner farm north and south. The utility pole structure is on the bank of the ditch but on cultivated land. Here, the span between structures is approximately 990 feet.

In the Van Horn case damages were fixed at $4750 for one H-pole structure in the fence line, one in the middle of the farm and the easement previously described. In the Bish case for one structure in the center of the farm, one in the east fence line and a similar easement damages were ascertained at $4750 and in the Carney Conner case damages were fixed at $3750 for one structure on the bank of the drainage ditch and the easement condemned for right-of-way.

The Charles (Tom) Conner and Louie Conner appeals were consolidated and next tried to the same court. The Charles Conner lands consisted of 645 acres in a compact unit, the east three quarter sections, each a mile long and 80 rods wide in section 14, 80 acres in the northwest quarter of section 13 and 85 acres across the road north in section 11. In this instance defendant condemned an easement 91 feet in width for a distance of 240 rods east and west across the land in section 14 following a fence line between the north and south half section. It constructed six H-pole structures with necessary overhanging of conductors and line clearances. One

pole of each structure is within one foot of the fence line with the other pole about 15 feet in the field. One "H" structure is near the east fence or property line.

Defendant also condemned an easement thirty-six and one-half feet in width over a distance of 160 rods along the south line of Conner's easterly 80 in section 13 for overhang for necessary conductors and line clearances from two H-pole structures located on abutting property to the south.

The court ascertained damages to the Charles Conner farm to be $15,500 for one structure in an established fence line, five structures with one pole each in a fence line and the other pole in the field, the easements described for overhang along the south line of the 80 and the easement 91 feet in width over 240 rods on the 480-acre tract.

The Louie Conner land consisted of a quarter section in the northwest quarter of section 18. Here defendant condemned an easement thirty-six and one-half feet in width over a distance of 160 rods for overhang for necessary conductors and line clearances from four H-pole structures located on abutting property to the south. Damages were ascertained to be $4250.

As indicated, the other three cases were consolidated and heard and determined by another judge. These were designated as the Warren Conner, Hebbel and Evarts appeals. The same transmission line on the same half-section line is involved.

The Warren Conner land consists of 240 acres, the west half of the southwest quarter of section 13 and the northwest quarter of section 24. An east and west road separates the north 80 from the south 160. The transmission line involved here is on the north boundary line of the north 80; that is, the half-section line of section 13. There are two sets of H-poles within a foot to 18 inches of the fence. The condemnation was for an easement fifty-four and one-half feet in width for the poles, wires and overhang over 80 rods. There

was no other encroachment. The transmission line of the condemned easement was one-half mile away and was separated by a public road and another transmission line from the south 160 acres. Damages were ascertained at $3850.

The Hebbel land consists of 160 acres in the southeast quarter of section 13. The transmission line is on the north line of the farm. The condemnation involves the north fifty-four and one-half feet for four H-pole structures, necessary overhang of crossarms, conductors and clearances. The easement is over a distance of 160 rods. The first structure is on the east fence line. The other three are about 40 rods apart from east to west. Damages were ascertained to be $5750.

The Evarts land consists of two noncontiguous 80-acre tracts, each the subject of a separate condemnation. At the nearest point they are 80 rods, or one-fourth mile apart. The tracts are described as the east half of the southwest quarter of section 13 and the east half of the northeast quarter of section 13. They are not operated as a single unit. The condemnation for easement across the south end of the northeast 80 covered the south thirty-six and one-half feet for overhang of two H-pole structures, crossarms, conductors and line clearances. There are no poles or structures thereon. Across the north end of the southeast 80 the easement covered the north fifty-four and one-half feet for two H-pole structures and necessary overhang. Each easement is over a distance of 80 rods. One award of $4000 was given for both condemnations.

There is a clearance of 27 feet for overhanging wires in each case.

II. The sole question determined in the appeals to the district court was the amounts of damages sustained by the respective landowners to each of the farms affected by condemnation for easements over which poles, lines and facilities were constructed and are to be maintained.

Defendant admits condemnees may recover such damages as they have suffered and concedes each of the farms involved in these appeals is a good farm. Its complaint is the amount awarded. It recognizes, in urging reversal or in the alternative remittiturs down to reasonable amounts, condemnation proceedings are tried as ordinary proceedings; and on appeal in a law action tried to the court its findings of fact have the effect of a special verdict and are equivalent to a jury verdict and if supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 334(f) (1), Rules of Civil Procedure.

Defendant maintains the court erred in overruling its objections to receiving in evidence four photographs purporting to show how construction of poles and lines on the Van Horn farm affected use of a tractor and farm equipment in cultivating the land. In other assignments defendant insists the court erred in admitting and considering opinions as to reduced value based on faulty premises and improper elements of damages and that the awards are excessive.

III. As stated, defendant's first assignment involves plaintiffs' offer of two pictures of a tractor drawing a fertilizer spreader in the area of H-pole constructions and two of the tractor operator standing on the cab to show the closeness of the overhanging wires. Defendant objected to the offer of the pictures identified as plaintiffs' exhibits A, B, C and D. Van Horn testified they were true and accurate representations of the scenes they purported to portray.

█ The admission or rejection of photographs rests largely in the discretion of the trial court. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 719–721, 107 N.W. 2d 85, 93; Hartwig v. Olson, 261 Iowa 1265, 1273, 158 N.W.2d 81, 85; Hardaway v. City of Des Moines, 166 N.W.2d 578, 582 (Iowa 1969) and authorities cited in these opinions. In Hardaway v. City of

Des Moines, supra, we again approved this statement from Coonley v. Lowden, 234 Iowa 731, 743–744, 12 N.W.2d 870, 878:

" 'So far as we can find, we have never reversed a case because of the admission of photographs. Other courts have also been slow to reverse because of such a ruling. [Citations] Reversible error does not necessarily result from the admission of a photograph even though it could properly have been excluded.' "

■ The assignment of error is without merit.

IV. The second assignment is directed toward the trial court's consideration of opinions expressed by plaintiffs and their value experts in its ascertainment of damages sustained by individual condemnees. Defendant maintains these opinions as to reduced values of the various farms were based on improper elements of damages and faulty premises and do not constitute substantial evidence required to support the trial court's findings.

In those instances where the farms were owned by husband and wife, the husband expressed his opinion as to before and after values of his farm. The before and after values of the Hebbel land were given by Mr. Buss who represented the two infirm owners. One of the remaindermen owning an interest in the Evarts' farms subject to a life estate, expressed his opinion as to the before and after values of these tracts.

Defendant made no objection to the qualification of these owners to testify as to values of their own farms. In most instances, facts in addition to ownership were detailed for the purpose of establishing qualification.

Most of the expert witnesses offered by plaintiffs on the issue of damages expressed opinions as to the before and after values of each tract condemned. Both these witnesses and plaintiffs-owners related facts taken into consideration in arriving at their opinions as to reduced values.

Some objections were made as to qualification of the experts. It is doubtful whether the objections as made were sufficient to preserve error, if any, in permitting the witnessess to testify as experts. In other instances, by stipulation of the parties, the court's rulings were reserved but no later request was made for a ruling.

Defendant argues, even if this court were to hold its objections were not proper, the facts related as a basis for the various opinions of plaintiffs and their witnesses are so deficient they do not afford foundation for the opinions expressed which thus fall short of constituting substantial evidence required as support for an award by the trial court.

Defendant relies for support on this statement in Roberts v. Koons, 230 Iowa 92, 96, 296 N.W. 811, 813:

"But in any case such witness should be qualified and the facts upon which he bases his opinion should be sufficient to enable a witness so qualified to express an opinion which is more than a mere conjecture. We think the opinion evidence should not have been admitted in the case at bar."

In Bernal v. Bernhardt, 180 N.W.2d 437, 441–442 (Iowa 1970) this court considered admissibility of a qualified expert's opinion when challenged by the opponent on the ground the expert failed to state a sufficient factual basis for expressing an opinion.

We repeat certain principles pertinent to a determination of defendant's contention.

■ Each plaintiff had the burden of proof both in the sense of producing evidence and having the risk of non-persuasion of the trier of fact as to the damages he sustained. See 9 Wigmore on Evidence, Third Ed., sections 2485 and 2487.

" * * * The basis for the award of damages in these cases is the difference between the reasonable market value of the entire tract immediately before the con-

demnation, and of the remaining portion after the taking." Hall v. West Des Moines, 245 Iowa 458, 464, 62 N.W.2d 734, 737, and citations.

Value of the various tracts involved before condemnation is not the ultimate issue. It is the starting point. But the question is how much each farm has been damaged or reduced in value by the transmission installation and easement.

The rule is expressed in this language in Jones v. Iowa State Highway Comm., 259 Iowa 616, 621–622, 144 N.W.2d 277, 280:

"The measure of damages for a partial taking is the difference in the fair market value of the subject property immediately before and immediately after condemnation. The fair market value of land is the price a willing buyer under no compulsion to buy would pay and a willing seller under no compulsion to sell would accept. A condemnee is damaged to the extent his property is diminished in value by the condemnation. * * * [Citing authority]."

■ It follows, that in order to establish this diminished value the condemnee's first burden is to substantiate the market value of his property before its appropriation. Any factor that will impress a willing buyer in purchasing the land, if otherwise competent, is both material and relevant for this purpose. Johnson County Broadcasting Corp. v. Iowa State Highway Comm., 256 Iowa 1251, 1253, 130 N.W.2d 707, 708–709 and authorities cited. Thus, a landowner is permitted to show all competent facts which an owner would properly and naturally press upon the attention of a buyer with whom he is negotiating a sale and all other competent facts which would naturally influence a person of ordinary prudence desiring to purchase—not as affording a measure of recovery but as tending to disclose the real character and condition of the property and as support for the estimates of value given by the witnesses. Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 111 N.W. 1027, 1028 and citations.

■ Once the landowner has generated a question for the trier of fact on this phase, his next burden is to show market value of the property after condemnation. Here again, every element which can fairly enter into the question of value and which an ordinary prudent man would consider before forming judgment in making a purchase should be considered, not as an independent element of damages but as a factor in determining the market value of the portion remaining after the taking.

Stated otherwise, "In fixing the damages sustained by the landowner to remainder property in consequence of the appropriation or injury of such owner's property for a public use there may be taken into account every nonspeculative element of inconvenience, annoyance, and disadvantage resulting from the improvement, which would influence an intending purchaser's estimate of the market value of such property, * * *, not by adding them together item by item or allowing them as such but such elements should be considered in determining the extent that, taken as a whole, they detract from the market value of the remaining property as a unitary whole." State, Department of Roads v. Dillon, 175 Neb. 444, 122 N.W.2d 223, 224. See also 29A C.J.S. Eminent Domain § 136(5) and authorities cited in support of the text.

The court recognized these principles in determining an award should be given in each case. The factual problem considered in Townsend v. Mid-America Pipeline Company, 168 N.W.2d 30, 33 (Iowa 1969) was not before the court.

We do not agree with the defendant's argument urged in support of this assignment that facts related by plaintiffs and their value witnesses as a basis for their opinions as to reduced values do not constitute substantial evidence supporting the court's findings.

It is true the owners and their value experts, or at least some of them, while testifying referred to compaction of the soil re-

sulting from installation, fear, danger and appearance damages. However, the court in its findings commented these elements were not the criteria to be considered except to the extent they might affect market value and was unable to find the diminished value of the tracts had been caused by these elements.

■ In arriving at the opinions expressed plaintiffs and their value experts detailed the character and condition of the farms involved before condemnation and related factors and elements resulting from the installation and easements which would properly and naturally influence an intending purchaser's estimate of the market value of such property. This evidence was not offered as affording an independent measure of recovery for these factors but as tending to support estimates of value given by the witnesses. It constitutes substantial support for the court's finding plaintiffs had sustained damages to the extent of the reduction in the market value of their farms by defendant's appropriation.

This assignment cannot be sustained.

V. Defendant's final contention is that the trial court's ascertainment of damages due each plaintiff is excessive.

By agreement of parties the court was authorized to embody its findings, conclusions and ascertainment of damages in a single instrument covering each of the five cases tried before that court. In those cases involving the remaining four tracts, the court made no detailed findings but determined the damages sustained by the individual condemnees.

Earlier, extent of the taking by condemnation in each instance has been described, noting the location and number of structures on individual farms as well as area of the easement appropriated. These details will not be repeated.

In the preceding division we rejected defendant's argument that plaintiffs' value testimony was so lacking in probative weight it did not constitute substantial support for the court's finding the condemnation had resulted in a reduction in value of the various farms. In this division we consider its contention there is not substantial support in the evidence for the amounts of the individual awards.

■ A condemnation case is one in which the amount allowed is peculiarly within the province of the trier of fact, and unless the same be shown to be so extravagant or penurious as to be wholly unfair and unreasonable this court has repeatedly refused to interfere with the award. Crozier v. Iowa-Illinois Gas & Electric Company, 165 N.W.2d 833, 835–836 (Iowa 1969) citing several of our own cases as authority.

■ In determining the contention the award is so excessive as to shock the conscience or sense of justice a reviewing court must take the evidence in the aspect most favorable to condemnee which it reasonably bears. Townsend v. Mid-America Pipeline Company, 168 N.W.2d at 33. The same principle is expressed in Newland v. Linn County Board of Sup'rs, 256 Iowa 424, 430, 127 N.W.2d 625, 628–629 when this court pointed out that unless there is a radical situation with reference to the amount of damages allowed by the trier of fact in a condemnation case or unless the amount is such that it shocks the conscience of the court, the amount of the award is a question for the trier of fact and neither the trial court nor this court should interfere.

There was a considerable difference in the opinions of plaintiffs' witnesses as related to the value of a particular tract. This is also true in regard to the opinions of defendant's witnesses. The fact there was a wide variance between the estimates given by plaintiffs' witnesses on the one hand and those given by defendant's witnesses on the other hand is not uncommon. " * * * The fact the verdict rendered more nearly reflects the thinking of plain-

tiffs' witnesses than that of defendant's witnesses is not a sufficient reason for us to interfere. If we did we would merely be substituting our judgment for that of the * * * [trier of fact]. This we should not do." Nelson v. Iowa State Highway Comm., 253 Iowa 1248, 1255, 115 N.W.2d 695, 699.

In each instance, the court's award was in excess of the testimony offered by defendant's witnesses but far less than the testimony of plaintiffs' witnesses. However, each award given was well within the limits fixed by the witnesses, a fact often regarded as persuasive. Stortenbecker v. Iowa Power & Light Co., 250 Iowa 1073, 1082, 96 N.W.2d 468, 473 and authorities cited.

■ It is well settled the trier of fact is not absolutely bound by testimony of experts on value even when undisputed but may use his own knowledge and judgment in connection with the testimony. Iowa Development Co. v. Iowa State Highway Comm., 255 Iowa 292, 300, 122 N.W.2d 323, 328.

With these rules in mind we deal with the individual awards.

VI. Van Horn, Bish and Carney Conner each testified that in his opinion the market value of his own farm had been reduced $16,000 by the taking.

The average estimate of reduced value of five witnesses offered by these plaintiffs was $17,200 whereas the average of the opinions expressed by defendant's six experts was $1330 to the Van Horn farm, $1340 to the Bish farm and $760 to the Conner farm.

As stated, the trial court ascertained the damages to the Van Horn farm at $4750, to the Bish farm at $4750 and $3750 to the Carney Conner farm.

■ We are not prepared to say that the amounts allowed in these three cases were so excessive that we may interfere.

VII. Warren Conner estimated the market value of his farm had been damaged $6000. Mr. Buss was of the opinion the market value of the Hebbel land had been reduced by $12,000 by reason of the taking. Mr. Pratt testified the damage to one eighty of the Evarts land was $2000 and $3200 to the other eighty for a total of $5200.

Plaintiffs' three expert witnesses estimated the Warren Conner farm had been reduced in value by $6000, the Hebbel land had been damaged to the extent of $12,000, and one eighty of the Evarts farm had been reduced in value by $4266 and the other eighty by $2266.

On the other hand, defendant offered evidence of four experts whose average opinions fixed damages to the Warren Conner farm at $1350, the Hebbel farm at $1630, and damage to both Evarts' eighties at $910.

As pointed out, the trial court ascertained damages to the Warren Conner farm at $3850, to the Hebbel land at $5750 and $4000 for both condemnations of the Evarts land.

■ We do not find the awards made by the trial court are so large as to call for our interference.

VIII. Louie Conner testified he had sustained $12,000 damage to his farm. The average of the five witnesses offered by him to establish the extent of his damage was $10,640.

Defendant offered four experts. The average of their estimates was $297 whereas the court ascertained Conner's damage to be $4250.

■ The award is not excessive.

IX. The remaining award for determination is the one given Charles Conner. The court found, although this 645-acre farm was located in three different sections of the township, it had been operated by plaintiff as a unit for the last several

**374**

years before the condemnation. Johnson County Broadcasting Corp. v. State Highway Comm., 256 Iowa 1251, 1254–1255, 130 N.W.2d 707, 709 has this pronouncement:

"We have frequently considered the question whether damages for a taking by condemnation should be assessed to all farmland in the vicinity owned by the condemnee or to the various tracts or parcels separately. If there is evidence from which the jury could reasonably find the entire acreage, though not contiguous, was used as one farm, so that the loss and inconvenience would affect its entire use and operation, then the question becomes one of fact. * * * [citing authorities]."

The court ascertained Charles Conner's damage to be $15,500.

The low estimate of reduced value of the five witnesses offered by this plaintiff was $24,575, the high, $56,500. Their opinions averaged $40,725. The low of the witnesses offered by defendant in this case was $2902.50, the high, $3250. The average of defendant's four witnesses placed the reduction in value at $3225.

A verdict should not be disturbed because of its size unless it is so flagrantly excessive as to shock the conscience or lack substantial support in the evidence. As stated, we do not substitute our judgment of the fair market value of real property for that of the trier of fact where the award is within the reasonable bounds of the evidence. This is true even though we consider the verdict larger than we would have rendered if we were triers of fact. Nelson v. Iowa State Highway Comm., 253 Iowa at 1254, 115 N.W.2d at 698.

It is clear we cannot say the finding of the trial court was so apparently and grossly wrong that substantial justice has not been done.

The trial court's ascertainment of damages due each plaintiff is

Affirmed.

All Justices concur except STUART, J., who dissents from Division VIII.