Crystal **HARRISON** and Susan Harrison, by their Father and Next Friend Gerald Harrison, and Gerald Harrison, Individually, Appellants,

v.

John **ULICKI**, Appellee.

No. 54750.

Supreme Court of Iowa.

Jan. 14, 1972.

**534**

Ulstad & Guinan, Fort Dodge, for appellants.

Mitchell, Mitchell, Murray & Goode, Fort Dodge, for appellee.

REYNOLDSON, Justice.

Plaintiffs are two children stricken with hepatitis in the summer of 1968, and their father, who claims for their medical expense and loss of services. Petition comprised three divisions based on negligence, implied warranty, and nuisance in the construction and maintenance of an allegedly contaminated well on premises leased from defendant by an uncle and aunt of the minor plaintiffs. Jury was waived and trial court found for defendant. We affirm.

Defendant's 15 acre rental tract was annexed into the city of Fort Dodge in 1966. In 1965 defendant had constructed a septic tank and drilled a well, for use by tenants of the house. He testified without contradiction he told the tenants, Mr. and Mrs. Virgil Robbins, that the water had not been tested and they could obtain drinking water at his place. These tenants lived in the premises from 1966 to October 1969. Larry Kelley, Mrs. Robbins' brother-in-law, was the first to become ill with infectious hepatitis in the summer of 1968. Mrs. Robbins could not recall him ever drinking any water at her home. While Kelley testified he "caught hepatitis there" he did not testify he drank any of the suspect water. Thereafter one of the Robbins children took sick with the disease. It then struck the two minor plaintiffs who played in the home and drank the well water when they accompanied their mother to the Robbins premises several times in July.

Before summarizing the evidence further, reference must be made to certain standard water tests. Evidence on this point, supplied for the most part by defendant's expert, was unrefuted and in fact partially substantiated by plaintiffs' witnesses.

Fecal coliforms (organisms) are normally found in the intestinal tracts of humans and animals. Non-fecal coliforms are cus-

tomarily found in plant soils. Non-fecal coliforms are not associated with disease-producing organisms, which are called pathogens. Fecal coliforms are not pathogens either, but are significant when found in a water test as indicating that pathogens which also come from the intestinal tract might reach the water supply by the same route.

Three progressive stages of laboratory analysis of water are used to determine the existence of coliforms and distinguish the types. The first two tests, the "presumptive" and "confirmed", indicate coliform presence, but not the type. Only the final "completed" or "invict" test will determine if fecal coliforms are present in the water.

Turning to plaintiffs' evidence, a Fort Dodge water plant employee testified he performed the first two tests on water samples from the suspect well, identified coliforms, but did not carry out the third test to determine if fecal coliforms were present. He conceded the water he sampled could show a high coliform count and consist entirely of non-fecal coliforms.

The medical doctor who treated the Robbins child testified that while fecally-contaminated water could be a carrier of infectious hepatitis, he had no way of knowing whether the Robbins water was so contaminated. He also testified the disease could be transmitted in several ways, including use of a common drinking cup, not washing after going to the bathroom and other unsanitary situations. When a number of people come down with hepatitis at the same time the doctor "would suspect a common source [such] as a well."

Dr. Forrest Dannenbring treated one of the minor plaintiffs. He testified human fecal matter is a medically recognized transmittal source of infectious hepatitis. Contaminated water can be a source of the disease as can "just plain unsanitary conditions." In this case "he would not know the particular mode of transmission and there is no way he ever could know." Neither he nor any other qualified witness testified it was probable the hepatitis was carried by pathogens from the water in defendant's well.

Plaintiffs proved the well and septic tank were only 39 feet apart. The health department plumbing code as found in the 1962 Iowa Departmental Rules (which parties stipulated the court should judicially notice) provided for a 50 foot minimum.

Defendant relied heavily on Dr. Edward Robert Baumann, a professor at Iowa State University. Two pages of the record carry his impressive qualifications in the areas of water pollution, hydrology and sanitary engineering. He inspected the premises on August 8, 1969 and September 4, 1969, and identified a number of pictures of the premises taken in his presence. These photographs verified his testimony and his conclusion that the unsanitary conditions he found were the worst he had ever encountered in all his experience. In his opinion, the contact transmission of the disease occurred because of these filthy surroundings.

I. Plaintiffs allege reversible error in the admission of the photographs identified by Dr. Baumann, claiming such photos, taken over one year after the children became ill, were too remote in time to be admissible.

Before the offer of this evidence and upon cross-examination, Mrs. Robbins had testified that the physical surroundings of the home, the furniture, the housekeeping and the general overall conditions were the same between the time the children became sick and the time she moved from the premises.

The admission or rejection of photographs rests largely in the discretion of the trial court. Van Horn v. Iowa Public Service Company, 182 N.W.2d 365 (Iowa 1970). A ruling on the admissibility of photographs will not be interfered with on appeal except upon a clear showing of abuse of discretion. Englund v. Younker Brothers, Inc., 259 Iowa 48, 142 N.W.2d

530 (1966). We have held a photograph taken long after the event may be admitted into evidence where the record establishes a substantial similarity of conditions between the time it was taken and the material date. Hardaway v. City of Des Moines, 166 N.W.2d 578 (Iowa 1969); Hartwig v. Olson, 261 Iowa 1265, 158 N.W.2d 81 (1968); Englund v. Younker Brothers, Inc., supra. In this case, the required foundation of similarity of conditions was supplied by testimony of Beverly Robbins. Admitting these photographs into evidence was not an abuse of discretion by the trial court. The weight to be given them was for the finder of fact.

II. Plaintiffs complain Dr. Baumann was permitted to describe conditions in the bathroom upon his inspections of the Robbins home. His visits, as indicated above, were in August and September of 1969, a year following the plaintiffs' illnesses and before Mr. and Mrs. Robbins left the premises in October. The witness testified,

"Well, the toilet bowl was full of fecal material, and obviously had not been functioning in an extended period of time. * * * There were thousands of flies all over the house, and this is without question the most revolting bathroom I have ever inspected."

However, Mrs. Robbins had already testified general conditions and housekeeping were substantially the same during all of the period. Where, as here, experts for both parties agreed unsanitary conditions could be a source of infectious hepatitis, the condition of the premises and Mrs. Robbins' housekeeping in particular became proper evidentiary targets.

 The objection of plaintiffs' counsel was again based on remoteness. The rule is well established the question of remoteness in time is to be determined by the sound discretion of the trial court. Tedrow v. Fort Des Moines Community Services, Inc., 254 Iowa 193, 117 N.W.2d 62 (1962). We hold trial court did not abuse this discretion by admission of this testimony. See also Erickson v. Barber, 83 Iowa 367, 49 N.W. 838 (1891).

 III. Plaintiffs assert trial court erred in permitting Dr. Baumann to testify concerning "invict" tests of the well water samples taken by him about a year following the infection of hepatitis occasioned to the minor plaintiffs, and in not striking this testimony. It was the opinion of this expert that if fecal coliforms had been present in the well in 1968, the same access would have remained available in 1969 and they would have appeared in the well water samples of that year. This witness twice testified no fecal coliforms were found in these tests of water from defendant's well. On the first occasion, plaintiffs' untimely and overruled objection was grounded on remoteness. When the testimony came in again, there was no objection, even though the witness never said he conducted or supervised the tests.

Assuming plaintiffs' objection based on remoteness was timely made and maintained, a testing at a remote time from the event in question may be shown where there is a substantial similarity of conditions. Hahn v. Graham, 256 Iowa 713, 128 N.W.2d 886 (1964) (examination of brake mechanism 40 days after auto accident); Friesland v. City of Litchfield, 24 Ill.App. 2d 390, 164 N.E.2d 606 (1960) (creek water tested in 1958, damages occurring in 1956 and 1957); Charles v. Texas Co., 199 S.C. 156, 18 S.E.2d 719 (1942) (test of diluted gasoline two years after samples were taken). Remoteness is usually regarded as affecting the weight, not the competency, of the evidence. Rain v. Balph, 293 P.2d 359 (Okl.1956) (involving test of well water). Here the record was plain that the physical characteristics of the septic tank, its sole outlet at a lower level some 200 feet from the house, the well and the condition of the premises had

not changed from 1968 to 1969. As conditions were substantially similar, the objection urged to this testimony was properly overruled by the trial court.

Cross-examination developed that samples of water collected by Dr. Baumann were analyzed by the Iowa State Hygienic Laboratory at Iowa City and the Vet-Medicine Diagnostic Laboratory. He received certified test results. Dr. Baumann relied on the results of these tests. No one from either laboratory was a witness in this trial.

Plaintiffs' counsel then moved to strike all of the doctor's testimony relating to the test because it "is now obvious that the causal connection required of the samples is not present." Trial court ruled the motion would be submitted with the case. The ruling below does not mention this motion or the test results. Trial court did find Dr. Baumann testified the well was insulated from fecal coliforms. This finding could properly be based on the expert's testimony that because the septic tank did not have a tile distribution field but only one water resistant fibre overflow pipe discharging the excess fluid at a lower level and approximately 200 feet from the house, the overflow would not run back to the vicinity of the well.

■ Assuming plaintiffs' motion was timely, the rule remains the motion to strike is limited to the ground specified and all grounds not urged are waived. 88 C.J.S. Trial § 142, p. 286.

■ The ambiguous wording of the motion in this instance did not apprise trial court of plaintiffs' complaint with the required specificity. One attempting to exclude evidence has a duty to indicate specific grounds to the court, whether the attempted exclusion is by objection or motion. See Deaver v. Armstrong Rubber Co., 170 N.W.2d 455 (Iowa 1969); Miller v. Davis, 193 Iowa 611, 187 N.W. 433 (1922). We hold trial court did not err in overruling this motion to strike.

IV. It is further claimed trial court erred in permitting defendant's expert to give his opinion on the probable source of transmission of the disease.

■ When Dr. Baumann was asked *if he had any opinion* as to the probable cause of transmission of the disease in this case, plaintiffs' counsel prematurely objected, "and we object to that as being no basis in the record for that. Everything he saw in all the samples he took were a year later." The objection was overruled. Instead of responding to the preliminary question the witness volunteered, "My observations of the case would indicate that this was a—a—without question a contact transmittance of the disease because of the filthy conditions on the interior of the Robbins' home and the surrounding area. * * * "

Plaintiffs' remedy, if available, was by motion to strike the answer. Trachta v. Iowa State Highway Commission, 249 Iowa 374, 86 N.W.2d 849 (1957). Because such motion was not made, the answer remained in the record for consideration. Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 138 N.W.2d 93 (1965).

V. Other assigned errors have been considered and found to be without merit.

The case is therefore

Affirmed.

All Justices concur, except HARRIS, J., who takes no part.