LENNA E. WALZ, appellee-appellant, v. WILLIAM H. BUSE, appellant, JEWETT REALTY COMPANY, appellee.

No. 52410.

(Reported in 149 N.W.2d 149)

354

MARCH 7, 1967.

Stewart, Miller, Wimer, Brennan & Joyce, of Des Moines, for appellant.

Patterson, Lorentzen, Wright & Irish, of Des Moines, for appellee-appellant.

Hansen, Wheatcraft, Galvin & McClintock, of Des Moines, for appellee.

BECKER, J.—That portion of this action which is directed against William Buse, defendant, is based on express contract. Plaintiff also sues defendant Jewett Realty Company seeking recovery on the theories of contract implied in fact, contract implied in law, and assumption of contract. At trial the court granted summary judgment against defendant William Buse, and sustained defendant Jewett's motion for directed verdict as to that corporation. We affirm as to defendant Buse. We reverse and remand as to defendant Jewett Realty Company.

The corpus of this action is the sale of an existing insurance agency. Plaintiff Lenna E. Walz is the widow and sole heir of Ed H. Walz who died on January 21, 1963. Ed H. Walz had been in the insurance business in Des Moines in the year 1960 and prior thereto. On October 20, 1960, he entered into a written agreement with William Buse to sell his insurance agency to Buse for the sum of $10,000 payable in $100 monthly installments with unpaid balance carrying 5 percent interest. The consideration was specifically set out at $5000 for the business and $5000 for an agreement not to compete. The buyer was to get: "(a) His aforesaid business of soliciting insurance as an agent and broker; (b) Any and all commissions due, or that may become due, on any policies or renewals, or as the result of the continuation of the business of any customer or customers; (c) Any and all such business transacted by him that appears on his books of account; and (d) Any and all books and records of such business."

Paragraph 18 provided:

"(a) Buyer agrees not to sell, assign, transfer or alienate said business being transferred for a period of five years commencing November 1, 1960, without the written consent of the Seller. Seller will not unreasonably withhold his approval of a transfer and agrees that he will enter into the selection of and abide by the decision of an arbiter in the event Buyer requests such proceeding upon Seller's refusal to approve such transfer. The foregoing restriction on transfer of the business shall be-

come inoperative in the event of the death or incompetency of the Seller prior to the passage of the said five year period.

"(b) This restriction on transfer of the business shall not be construed to prohibit the Buyer's administering, servicing and billing of the business being transferred either in the name Wm. H. Buse and Associates Insurance Agency, or in the name Jewett, Buse and Chinn Insurance Agency or in the name of a successor to either such agency."

I. The propriety of granting summary judgment against William Buse must first be considered. The facts are undisputed that Walz and Buse entered a contract; the assets of the insurance agency were delivered by reason of that contract; Mr. Walz, and after his death, his widow, received substantial payments in accordance with the contract; the payments ceased without explanation in November 1963.

In his answer Mr. Buse pled affirmatively that plaintiff here is not the real party in interest, that Mr. Buse received no benefit from the contract and that the damages demanded are not in accordance with the terms of the contract. None of these defenses are argued on appeal and are therefore not considered.

██ ██ Mr. Buse does argue in this court that he entered into the contract in question solely as agent of Jewett Realty Company. The terms of the contract clearly bind the defendant individually. Nothing in Mr. Buse's testimony indicates that as between Mr. Walz and Mr. Buse there was any understanding that Mr. Buse was acting as agent only. On the contrary all of the evidence indicates that at the time the contract was executed Mr. Walz understood, believed and relied on the fact that he was dealing with Mr. Buse individually. Therefore, regardless of the liability of Jewett Realty Company, Mr. Buse was individually bound on the contract. "An agent, while acting for his principal, may personally obligate himself to a third person with reference to the matter he is handling for his principal." Wheeler Lbr. Brge. & Sup. Co. v. Anderson, 249 Iowa 689, 694, 86 N.W.2d 912.

II. Plaintiff's appeal attacks the court's action in directing a verdict in favor of defendant Jewett Realty Company. In reviewing this matter we consider the evidence in the light most favorable to plaintiff. We first review that evidence in some

detail before considering the theories espoused by plaintiff. From the evidence, the jury could have found the following facts.

Jewett Realty Company was in the insurance business since 1926. In 1960 it hired William Buse as general manager of the company and filed a trade name affidavit to use the name Jewett, Buse and Chinn Insurance Agency which showed Jewett Realty Company as the sole owner of that new organization. Hereinafter we will refer to both the corporation and the sole proprietorship as Jewett.

After discussion with Mr. Buse, Jewett bought several insurance agencies. The Chinn Agency was purchased by Jewett after consultation with the officers. On September 30, 1960, the Sears Insurance Agency was purchased by Mr. Buse in his own name but all of the business thereof was added to the Jewett, Buse & Chinn Agency. The purchase price was paid by defendant's agency. The assets, renewals and business secured thereby remained a part of Jewett's business to the time Mr. Buse left the organization and was retained after he left.

The Murphy Insurance Agency was also purchased by Mr. Buse under a similar arrangement and the business of that agency also became a part of Jewett.

Mr. Buse made a substantially similar contract with Mr. Walz. The Walz agency was larger than the Sears and Murphy agencies but smaller than the Chinn agency. Mr. Walz's contract forbade assignments without Walz's consent while Walz lived. The business of the Walz agency was also assimilated into defendant's organization.

All purchase money payments to Walz were made by check drawn on the Jewett, Buse & Chinn Agency. All funds from the purchased businesses flowed into that agency.

A Mr. Gregson who worked for Jewett from October 1960 to November 1963 testified that he handled renewals and accounts receivable. He handled the Walz accounts, they were a part of the Jewett, Buse & Chinn Agency. The premiums from Walz accounts were deposited to the Jewett account. He estimated that they amounted to $30,000 per year or slightly more.

Both Gerald A. Jewett, president of defendant company, and Homer H. Jewett, secretary, testified in their discovery

depositions that William Buse was the general manager of Jewett, Buse & Chinn Insurance Agency from June 1960 to October 1963. He had authority to write checks, administrative duties were handled solely by Mr. Buse, he signed at least one contract with an insurance company with which they were doing business, hired and fired personnel.

Both officers knew that from the fall of 1960 to Buse's departure Jewett was servicing the purchased accounts. Homer H. Jewett was quoted in the record as also having testified:

"It would be a presumable conjecture that the money would come in from the insureds, go into the Jewett, Buse and Chinn account, and that some of that money went to the insurance company, and some would go out to people from whom these assets were purchased, being Mr. Sears, Mr. Walz and Mr. Murphy, and some of it would be retained in the agency account. I am aware that these commissions were paid to these individuals, and were led to believe that there were offsetting figures which, naturally, the carriers had to be paid, and also we were presumably getting commissions ourselves or whatever you would call it. I knew this whenever they were purchased. I don't know that they were purchased in 1960."

In October 1963 the Jewett, Buse & Chinn Agency discharged Mr. Buse and hired a new manager. By this time, the Murphy and Sears contracts had been fully paid out. When Mr. Buse left he claimed the renewals from the Sears, Murphy and Walz accounts. The officers of the company agreed to give them to him but did not do so because Buse had used their funds to pay on the contract purchase of those agencies. They kept the accounts but stopped paying on the Walz contract.

Mr. Manning, the manager who followed Buse, testified that at the time Mr. Buse left the insurance contracts were so coded that it was possible to tell what business belonged to Buse; i.e., what business came from the purchased accounts. He said that at the time of trial it was no longer possible to make this distinction.

The record contains more evidence but we think this necessarily lengthy account will suffice.

III. Plaintiff's first assignment of error is that this

case should have been submitted to the jury on the theory of implied contract. We do not agree.

"There is no difference in the binding force of an express contract and a contract implied in fact. The essential elements of each are the same. A meeting of the minds is just as essential to the existence of one as to the other. Each must be established by proof or admissions for a recovery [cases cited]." Maasdam v. Estate of Maasdam, 237 Iowa 877, 889, 24 N.W.2d 316.

"Implied contracts are implied in fact or implied in law. A meeting of the minds is as necessary to a contract implied in fact as to an express contract.

"In Thompson Yards v. Haakinson & Beaty Co., 209 Iowa 985, 989, 229 N.W. 266, 268, it is stated:

" 'To the existence of an implied contract there must be a meeting of the minds—agreement. The agreement, however, is shown by circumstances, instead of by mutually expressed intent. The difference between implied and express contract is in method of proof.' " Bruggeman v. Independent Sch. Dist., 227 Iowa 661, 665, 289 N.W. 5; Smith v. Stowell, 256 Iowa 165, 125 N.W.2d 795.

Here the contract between Walz and Buse expressly negatived the intent to include Jewett in the contract except as to administration of sales and collections; cf. paragraph 18 heretofore quoted. The court correctly directed a verdict on this theory.

IV. Plaintiff's second assignment of error is based on quasi contract or contract implied in law. "A quasi contract is not based on the intention or consent of the parties but is founded on considerations of justice and equity and often on the doctrine of unjust enrichment." Bruggeman v. Independent Sch. Dist., supra, at 666. But this assignment of error contains its own defect under the record now before us. "The Court erred in not submitting the issue to the jury of whether or not the Plaintiff was entitled to fair and reasonable compensation from the Defendant, Jewett Realty Company, for the Defendant's use of the Plaintiff's assets and the Defendant's unjust enrichment thereby."

Plaintiff made no effort to prove the value of the "fair and

reasonable compensation * * * for Defendant's use of Plaintiff's assets and the unjust enrichment thereby." The prayer for relief was for the unpaid installments on the Walz-Buse contract. No evidence of damages or value other than that inherent in the contract was offered. The evidence of gross premiums and percentage to be retained as commissions would not be enough to permit a jury verdict based on fair and reasonable value. "In order to be entitled to an award of damages, the claiming party has the burden of proving the value of the damages as to each item with some reasonable measure of certainty." B-W Acceptance Corporation v. Saluri, 258 Iowa 489, 497, 139 N.W.2d 399, 404.

We deem this deficiency fatal to this assignment of error. Since this case is remanded for retrial we think it necessary to note that plaintiff is not precluded by this opinion from pursu ing the theory of quasi contract or unjust enrichment if she can produce the evidence giving rise to the doctrine and creating a jury question both as to liability and damages.

V.   Plaintiff also contends that the case should have been submitted on the theory Jewett Realty Company adopted the express written contract that plaintiff had with William Buse and was bound thereby. Here plaintiff is on solid ground.

■   "*Adoption of existing contract.* If a person who is a stranger to a contract deliberately enters into relations with one of the parties which are consistent only with an adoption of such contract, and so acts as to lead such party to believe that he has made the contract his own, he will not be permitted afterward to repudiate it." 17 C. J. S., Contracts, section 4 at page 562.

■   Defendant concedes the foregoing is a proper abstract statement of law but contends that defendant knew nothing of the contract before Buse left and the contract was found in the file. The jury was not compelled to believe this in light of the acknowledged fact that the officers knew they were doing a large volume of business (about $15,000 in annual premiums according to their new manager's statement and about $30,000 worth of business according to a former employee's statement) by virtue of the Walz accounts. Further, Mr. Buse was general agent of the corporation whose acts in the words of the president "were

subject to review by the officers of the Jewett Realty Company, but their authority was delegated to Mr. Buse to run the agency." For three years Jewett Realty Company acting through their agent, Buse, treated the contract in every way as though the Jewett, Buse & Chinn Agency was the purchasing party.

We think it equally important that Jewett's officers acknowledged that when Buse left they had this large volume of business that they knew was there by virtue of the Walz contract; the contract provided that the business remained the property of Walz until paid for; Jewett had been receiving the commissions therefrom; and it refused to return that business to Buse. It did not return it to Mr. Walz. The corporation elected to keep the business thus generated, continue to service the accounts, and commingle the business with its own accounts in such manner that it could not at time of trial be identified as to source. With this evidence before it the court should have allowed the jury to determine whether defendant had assumed the obligations as well as the assets of the contract.

In Duntz v. Ames Cemetery Assn., 192 Iowa 1341, 1344, 186 N.W. 443, plaintiff contracted to sell real estate to the cemetery association. The association quitclaimed to the City of Ames. The city took the real estate and continued to use it but did not expressly agree to pay the deferred installments on the purchase price. Plaintiff contended that the city had received and accepted the benefits of the transaction and is bound by its burdens; i.e., the conduct of all the parties, especially the city, imposed the obligation on the city to pay in accordance with the original contract. We said: "The cemetery association dealt with the defendant city in good faith and surrendered things of value for the benefit of said city. This being true a mere irregularity in the exercise of the power conferred cannot be interposed. Equity will require, independently of an express contract, that the defendant city under the circumstances shall do justice and will impose an obligation upon the city in this respect."

Plaintiff cites in her brief various cases from other jurisdictions which establish the Corpus Juris Secundum citation at the start of this division.

In G. & H. Coal Co. v. Freeman, 160 Okla. 214, 215, 16 P.2d 863, 864, where plaintiffs had entered into a contract with a prior owner concerning the mining of coal and defendant subsequently purchased the property, nothing being said about plaintiffs' contract, plaintiffs continued to work the mine and defendant paid them in accordance with the original contract, defendant could not later break the contract after plaintiffs had done substantial work. The court approved an instruction which stated in part that if the defendant with knowledge of the contract permitted plaintiffs to continue work and to make payments according to the terms of the contract " 'then the defendant in law is held to have adopted said contract and become liable thereunder.' "

In Great Western Theatre Equip., Inc. v. M. & E. Theatres, Inc., 164 Wash. 557, 3 P.2d 1003, 7 P.2d 1119, where plaintiffs sold sound equipment to a purchaser and the equipment was used in a theater which subsequently passed through several hands, during which time the equipment was used and payments were continued, the defendant could not later repudiate the contract after the equipment had disappeared.

The Supreme Court of the United States has said: "It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations. 2 Pom. Eq. Jur. sec. 965; Chicago & A. R. Co. v. Chicago V. & W. Coal Co., 79 Ill. 121." Wiggins Ferry Co. v. Ohio & Mississippi Ry. Co., 142 U. S. 396, 408, 12 S. Ct. 188, 192, 35 L. Ed. 1055.

We have recognized that the evidence available to us must be viewed in the light most favorable to plaintiff. We also recognize that Jewett Realty Company has had no opportunity to present its evidence. Our decision here is that the fact finder, in this case the jury, should have been permitted to decide this

case under appropriate instructions.—Affirmed as to defendant William H. Buse's appeal. Reversed and remanded as to plaintiff's appeal.

All JUSTICES concur except THORNTON, J., not sitting.