Craig A. IRONS and Kathryn S. Irons,
Appellees/Cross–Appellants,

v.

COMMUNITY STATE BANK,
Appellant/Cross–Appellee.

No. 89–795.

Court of Appeals of Iowa.

Aug. 30, 1990.

Donald G. Thompson and Dean A. Spina of Bradley & Riley, P.C., Cedar Rapids, for appellant.

James W. Hall, P.C., Cedar Rapids, for appellees.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

OXBERGER, Chief Judge.

Craig and Kathryn Irons farm. The Irons had been customers of Community State Bank (bank) for several years and had obtained numerous loans from the bank. In 1985, the bank refused to advance loans for the 1985 crop year. It consolidated the Irons' outstanding loans into one $212,000 note. The bank recommended the Irons seek financing from the Farmers Home Administration (FmHA). The Irons began borrowing money from the FmHA, using part of the money to pay part of the debt with the bank and using the remainder for operating expenses. The FmHA required the bank to enter into new security agreements with the Irons and to release its prior security interest in favor of the FmHA. The FmHA also informed the bank that if the Irons were unable to pay on their bank debt, the bank may be required to carry the loan without interest.

After the Irons obtained refinancing from the FmHA, a dispute arose between the Irons and Community State Bank. In 1987 the Irons sued the bank, seeking compensatory and punitive damages on various theories. The Irons claimed that the bank acted improperly by: 1) cutting off credit to the Irons; 2) obtaining additional security from the Irons and from Craig Irons' father; 3) violating the terms and conditions of the FmHA refinancing; 4) collecting money from the Irons; and 5) attempting to force the liquidation of the Irons' farming operation.

The jury returned a verdict in favor of the Irons for $90,500 compensatory damages and $100,000 punitive damages. The jury found the Irons entitled to recover on the grounds of breach of contract, fraudulent misrepresentation, breach of fiduciary duty, and intentional interference with contract. Subsequent to the jury verdict, the district court denied the Irons' requested equitable relief to rescind or cancel the 1985 note and related security documents they had with the bank.

The bank appeals the judgment based on the jury verdict. The Irons cross-appeal, challenging the district court's judgment denying them equitable relief.

The bank contends that there was insufficient evidence to support the jury verdict on each claim and the award of punitive damages. The bank also claims that the court improperly instructed the jury on breach of a contract implied in law, when the instructions should have been on a contract implied in fact. Further, the bank objects to the court's instruction on intentional interference with contract because the Irons did not plead these claims and did not include them in their pretrial statement. The bank argues that the court improperly instructed the jury it could find that the bank intentionally interfered with the contract between the bank and the FmHA rather than the Irons and the FmHA. Further, the bank claims the counts of fraud and breach of fiduciary duties should not have been submitted to

the jury, as they were not supported by the evidence. The award of punitive damages is also contested.

On cross-appeal, the Irons contend the trial court sitting in equity erred in refusing to cancel their note with the bank. They argue their note should be canceled because the jury found that the bank had breached a contract, engaged in fraudulent misrepresentation, and breached a fiduciary duty with respect to the note.

Our review of the law issues of this case is on errors of law, while our review of the equity issues is de novo. Iowa R.App.P. 4.

### I. Fiduciary Relationship

■ The Irons contend the bank breached a fiduciary duty to them. However, we find the establishment of a fiduciary relationship between the bank and the Irons is not supported by substantial evidence.

The Iowa Supreme Court has stated:

A fiduciary relationship has been generally defined in this way:

A fiduciary relationship exists between two persons when one of them is under a *duty* to act for or to give advice for the benefit of another *upon matters within the scope* of the relation.

Restatement (Second) of Torts § 874 comment a, at 300 (1979) (emphasis added). A fiduciary relationship has also been defined as:

[a] very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another. One founded on trust or confidence reposed by one person in the integrity and fidelity of another. A "fiduciary relation" arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal. Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other.

Black's Law Dictionary 564 (5th ed. 1979) (citations omitted).

Some relationships necessarily give rise to a fiduciary relationship. Such relationships would include those between an attorney and client, guardian and ward, principal and agent, executor and heir, trustee and *cestui que trust.* *Id.*

Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another. (Citation omitted). *See generally* 36A C.J.S. *Fiduciary,* at 386–87 (1961). Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case. Annot., 70 A.L.R.3d 1344, 1347–48 (1976).

*Kurth v. Van Horn,* 380 N.W.2d 693, 695–96 (Iowa 1986).

■ Generally, a fiduciary duty or confidential relationship does not arise solely from a bank-depositor relationship. *Id.* at 696. A confidential relationship "is ordinarily nonexistent in [a banker-borrower relationship], as other jurisdictions have squarely held." *Manson State Bank v. Tripp,* 248 N.W.2d 105, 108 (Iowa 1976). In *Kurth,* as in this case, there was not substantial evidence of a fiduciary relationship between the bank and its depositor turned borrower. *Kurth,* 380 N.W.2d at 698. *See also, Sinnard v. Roach,* 414 N.W.2d 100, 105–06 (Iowa 1987) (analysis in fraud case against bank parallels analysis in breach of fiduciary relationship case; evidence insufficient to support finding such relationship).

The Irons apparently feel because they reposed some trust in the bank, a fiduciary relationship was created. However, not only does the record fail to show a fiduciary relationship based on the facts, but also there is no evidence the bank ever assented to or was aware of a fiduciary relationship. *See Kurth,* 380 N.W.2d at 698. The various conversations Craig Irons had with bank officers concerning loan repayments, price and sale of crops, and

other matters certainly do not raise the relationship to the special and elevated rank of fiduciary.

■ The main premise of the breach of fiduciary complaint is the bank advised the Irons to seek financing from the FmHA in furtherance of the bank's own interests. We fail to see how this is a breach of a fiduciary duty. Indeed, it seems to have been to the Irons' advantage to obtain the FmHA financing.

The bank had already informed the Irons it would not loan operating money for the 1985 crop year because of the extent and tenuousness of the Irons' existing indebtedness to the bank. This the bank was certainly free to do. There existed no binding contract that the bank would continue to loan the Irons money year after year at the Irons' convenience. Nor was the bank under a fiduciary duty to loan the Irons operating money. Without the FmHA loans, the Irons would most likely be without operating capital altogether.

The FmHA loan was for a much lower interest rate than the bank loans. This also worked to the Irons' advantage. They obtained the necessary operating capital, and even expanded their farming acreage while receiving FmHA money.

Additionally, the Irons obtained a large amount of capital from FmHA which they could apply against their outstanding principal debt with the bank. The bank loan interest rates ranged from fourteen to fourteen and one-half percent, while the FmHA loans were in the five to six percent range.

■ The Irons also claim a fiduciary breach because the bank failed to notify the Irons of the terms between FmHA and the bank. First, we observe the agreements in question were between the bank and FmHA. The purpose of the agreements basically was to subrogate the bank's interests in previously secured collateral to the FmHA. Only by subrogating these interests would FmHA loan the money.

Second, the Irons were free to inquire into the nature and extent of the FmHA-bank agreements. The fact they chose not to do so does not create a breach of the bank's fiduciary duty to the Irons, if such a duty even existed. The Irons were informed that some understanding between the bank and FMHA had been reached. They chose to inquire no further.

Third, the Irons were not unsophisticated borrowers. Craig had dealt with the bank concerning numerous loans, both large and small. He was aware of the loan process. In addition, Kathryn had previously worked for FmHA and had some knowledge of the loan process and its requirements.

The record fails to show substantial evidence for a breach of a fiduciary duty by the bank to the Irons. We reverse on this issue.

## II. *Fraudulent Misrepresentation*

■ To show fraud, the plaintiff must establish: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage. *Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562 (Iowa 1987); *Cornell v. Wunschel*, 408 N.W.2d 369 (Iowa 1987); *Beeck v. Kapalis*, 302 N.W.2d 90 (Iowa 1981). The plaintiff's reliance must be justifiable. *Beeck*, 302 N.W.2d at 94. A statement of intent to perform a future act is actionable if the speaker had an existing intention not to perform. *Robinson*, 412 N.W.2d at 565.

"Unless the present state of mind is misstated, there is no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent. It may, however, be inferred from the circumstances, such as the defendant's insolvency or other reason to know that he cannot pay, or his repudiation of the promise soon after it is made, with no intervening change in the situation, or his failure even to attempt any performance, or his

continued assurances after it is clear that he will not do so."

Prosser, *The Law of Torts*, § 109, pgs. 730–731 (4th ed. 1971).

Thus, when a promise is made by one individual in good faith with the expectation of carrying that promise out, the mere fact the promise was not fulfilled does not, alone, constitute actionable fraud. For the breaking of such a promise to be actionable as fraud, the speaker must have had an existing intent not to perform at the time the promise was made. *See Robinson*, 412 N.W.2d at 565–66. Nonperformance alone does not prove an intention not to perform. Otherwise every breach of contract would call for a fraud remedy. *Id.*

■ The representation or promise need not be an affirmative misstatement. Fraud can also arise from failure to disclose material facts. *Sinnard*, 414 N.W.2d at 105. The misrepresentation or failure to disclose material facts must relate to a material matter which is known by the party. The party must have a legal duty to communicate the information to the other party. Such a duty can arise from a relation of trust, a relation of confidence, inequality of condition and knowledge, or other circumstances as shown by a particular fact situation.

■ The burden is on the plaintiff to establish fraud by a preponderance of clear, satisfactory, and convincing evidence. *Robinson*, 412 N.W.2d at 565; *Cornell v. Wunschel*, 408 N.W.2d 369, 374 (Iowa 1987).

The Irons maintain the bank made fraudulent misrepresentations to them based on the bank's fiduciary obligation to reveal material information to them. "While this is a case argued [in part] upon principles of fraud, our analysis of the duty-to-reveal issue parallels the same analysis in a breach of fiduciary or confidential relationship case." *Sinnard*, 414 N.W.2d at 105. Because we have already determined substantial evidence did not exist to establish a fiduciary relationship and a breach thereof, we accordingly determine there can be no fraudulent misrepresentation based on breach of a fiduciary duty.

■ Additionally, the record reveals no fraud in obtaining additional collateral or guarantees from James Irons, the father of Craig. The bank never promised Craig it would not seek additional collateral or guarantees. When the bank did seek additional security from James, he had come to the bank to acquire a loan. James knew what he was doing. He had dealt with the loan process on numerous occasions. Both he and the bank appear to have been following normal business practices. Additionally, as James is not a party to this suit, no claim for damages to him may be made. We reverse on the issue of fraudulent misrepresentation.

### III. *Breach of Contract*

The bank contends the trial court erred by instructing the jury on an implied in law contract. Additionally, the bank asserts that there is a lack of substantial evidence to support the jury's finding of a breach of contract.

Over the bank's objection, the trial court instructed the jury on an implied in law contract theory. The instruction objected to read:

The plaintiffs have the burden of proving by a preponderance of the evidence the existence of contracts between the plaintiffs and defendant.

A contract may be express or implied. When the parties manifest their agreement by words, either written or oral, the contract is said to be express. When the parties manifest their agreement by conduct rather than words, the contract is said to be implied. Both express contracts and implied contracts are true contracts by a mutual manifestation of consent by the parties to the same terms of the contract. The only difference arises from the method of proving the existence of the contract.

The legal relationship between the parties to express contracts is dependent upon the interpretation of their expressions of consent, whether written or oral; in implied contracts the relationship between the parties is not dependent on

such interpretation. An implied contract arises from the surrounding circumstances concerning the relationship of the parties. An implied contract *can arise without any expression of assent and sometimes even against a fair expression of dissent.* (Emphasis added.)

■ The bank claims error in giving the implied in law contract instruction on the grounds that the Irons' claims and evidence were premised on a breach of an implied in fact contract. The Irons contend the bank breached an implied understanding which was implied from the circumstances. This indicates an implied in fact contract rather than one implied in law. *See Walz v. Buse,* 260 Iowa 353, 149 N.W.2d 149, 152 (1967). An implied in fact contract arises from the conduct of the parties, not merely from their relationship, and requires an expression of assent.

A contract may be express or implied. When the parties manifest their agreement by words, the contract is said to be express. When it is manifested by *conduct,* it is said to be *implied in fact.* Both are true contracts formed by a mutual manifestation of assent by the parties to the same terms of the contract. The differentiation arises from the method of proving the existence [of the contract].

*Duhme v. Duhme,* 260 N.W.2d 415, 419 (Iowa 1977); *see also Walz,* 149 N.W.2d at 152–53; *Maasdam v. Maasdam's Estate,* 237 Iowa 877, 889–90, 24 N.W.2d 316, 322 (1946); Restatement (Second) of Contracts § 4 (1981).

An implied in law or quasi-contract "is no contract at all, but a form of the remedy of restitution." Restatement (Second) of Contracts § 4, Reporter's note to comment b (1981).

A quasi contractual obligation is one that is created by law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. If this is true, it would be better not to use the word "contract" at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretations.

Corbin on Contracts § 19 (1952).

■ A contract implied in law is an obligation imposed by the law without regard to either party's expressions of assent either by words or acts. *Id.* Such contracts are more properly called quasi or constructive contracts. 66 Am.Jur.2d *Restitution and Implied Contracts* § 2 (1973). Quasi contracts are imposed by law to prevent unjust enrichment: A person should not be allowed to enrich herself at the expense of another. *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298, 301 (1966). Therefore, the law will order the person benefited to pay just value to prevent unjust enrichment. *Id.; Gard v. Razanskas,* 248 Iowa 1333, 85 N.W.2d 612, 614 (1957).

The North Dakota Supreme Court has outlined a set of elements to be proved on quasi contracts which we find helpful:

1. An enrichment;

2. An impoverishment;

3. A connection between the enrichment and impoverishment;

4. Absence of a justification for the enrichment and impoverishment; and

5. An absence of a remedy provided by law.

*D.C. Trautman Co. v. Fargo Excavating Co.,* 380 N.W.2d 644, 645 (N.D.1986).

There cannot be both an express contract and an implied in law contract for the same thing existing at the same time. 66 Am. Jur.2d *Restitution and Implied Contracts* § 7 (1973). The Iowa Supreme Court has "held many times that one who pleads an express oral contract cannot ordinarily recover upon an implied contract or quantum merit." *Guldberg,* 259 Iowa at 878; 146 N.W.2d at 301. However, where an express contract proves unenforceable, the law may imply a contract. 66 Am.Jur.2d *Restitution and Implied Contracts* § 7 (1973).

■ To give a proposed instruction, the theory or cause must have been pleaded or properly litigated. *Gunnison v. Torrey,* 216 N.W.2d 361, 364 (Iowa 1974). The evidence must be sufficient to warrant submission to the jury. *Id.* The trial court must give the evidence the most favorable construction it will reasonably bear in favor of the party urging submission. *Id.*

All issues which are pled and for which there is substantial support in the evidence must be submitted. It is error not to do so, *just as it is error to submit those which do not conform to both these conditions.*

*Seaway Candy, Inc. v. Cedar Rapids YMCA,* 283 N.W.2d 315, 316 (Iowa 1979) (*citing Mora v. Savereid,* 222 N.W.2d 417, 419 (Iowa 1974) (emphasis added).

It is the trial court's duty to instruct with reasonable fullness on the pleaded issues which have evidentiary support. A mere abstract definition of the law having no application to the facts is insufficient. The giving of instructions which are conflicting and confusing is reversible error.

*Hartwig v. Olson,* 261 Iowa 1265, 158 N.W.2d 81, 88 (1968); *see also Moser v. Stallings,* 387 N.W.2d 599, 605 (Iowa 1986); *Sammons v. Smith,* 353 N.W.2d 380, 385 (Iowa 1984).

We now consider the trial court's instruction No. 19 on implied contracts in light of these guidelines.

■ We determine neither the pleadings nor the evidence in the record supports instructing the jury on implied in law contracts. As a matter of law there is an existing express contract on the same matter: the $130,000 promissory note from Craig Irons to the bank. No evidence was presented showing the bank was unjustly enriched in any manner. In fact, the evidence shows the bank has consolidated and rewritten the Irons' note at a lower rate of interest, resulting in a substantial savings benefit to the Irons. The bank's advice to go to the FmHA has enabled the Irons to stay in the farming business. The evidence shows the Irons have not been harmed or impoverished by the bank's actions.

We determine there is no substantial evidence on the record justifying a jury verdict for the Irons on an implied in law contract. Nor was the issue clearly raised by the pleadings or facts to justify instructing the jury on it. Also, the Irons had an adequate remedy at law by way of either express or implied in fact contract actions.

■ Additionally, the instruction is confusing. It is an incorrect statement of the law. The instruction fails to properly distinguish between contracts *implied in fact* and contracts *implied in law.* Contracts *implied in fact* require mutual expressions of assent. Contracts *implied in law* are imposed by the court to prevent unjust enrichment and require no expression of assent.

We determine the jury could have assumed from this instruction that an implied in fact contract, such as the Irons actually allege and attempt to prove, could be found *in the absence of mutual consent of the parties.* Such a result would be clearly contrary to law. No special verdict form shows exactly on what theory the jury based its breach of contract verdict. We determine the trial court committed reversible error by incorrectly instructing the jury on implied in law contracts.

The bank also argues substantial evidence does not exist to support the jury's finding of a breach of express or implied in fact contract. The only express contract between the bank and the Irons is the $130,000 promissory note. The Irons do not claim the bank has breached any provisions of this note. Indeed, it is the Irons who have breached the provisions of the express contract between the parties by not paying the installments on the note as they became due.

■ The Irons allege breach of an implied contract based on the bank's refusal to advance financing for the 1985 crop year. However, no showing has been made of mutual assent of the parties to such an arrangement. Simply because the bank has loaned the Irons operating capital in the past does not mandate that it continue to do so. The Irons' unilateral expecta-

tions and understandings do not create a contract. The law of contracts and commercial deal is based on the parties' mutual assent. To hold otherwise would be contrary both to law and good business practice. The bank should not be forced to continue to loan money to a borrower it has determined presents too great a risk of default. We determine there is a lack of substantial evidence in the record to support a breach of contract verdict on this issue.

▇▇ The Irons assert breach of an implied contract based upon the documents and agreements between the bank and the FmHA, and various correspondence between themselves and FmHA. Again, we determine there is a lack of substantial evidence to support a jury verdict of breach of contract based on these items. The written agreements involved are between FmHA and the bank. The Irons are not a party to these. In fact, they did not even obtain some of the documents they claim formed part of the contract until after this litigation began. No third party beneficiary instruction was submitted to the jury.

Nothing in the agreement between the bank and FmHA precluded the bank from obtaining separate security for the Irons' obligation to it or from attempting to collect payments on their obligation to the bank in circumstances where the FmHA not only failed to notify the bank not to do so, but also knew the payments were being sought. In fact, the FmHA specifically knew of the December 1985 interest payment. In 1987 the FmHA itself proposed the Irons pay the bank the balance of the 1985 principal and interest to date.

▇▇ The FmHA never informed the bank the Irons had cash flow problems. Had the FmHA so informed the bank, the bank could have been required to carry the Irons' outstanding loans without security or interest. In the absence of such notification, the bank was free to obtain security and continue charging the agreed upon interest.

We determine no substantial evidence exists to support a breach of contract claim, either express or implied in fact. The Ir-

ons have failed to show mutual assent of the parties, as is required by both express and implied in fact contracts. We reverse on the issue of breach of contract.

## IV. *Intentional Interference with Contract*

▇▇ Intentional interference with a contract consists of the following elements:

(1) The existence of a valid contractual relation,

(2) Knowledge of the relationship,

(3) Intentional interference inducing or causing a breach or termination of the relationship, and

(4) Resultant damage to the party whose relation has been disrupted.

*Kendall/Hunt Publishing Co. v. Rowe,* 424 N.W.2d 235, 244 (Iowa 1988).

▇▇ There is no substantial evidence the contractual borrower-lender relationship between the Irons and FmHA was breached or terminated. The relationship continued to trial and the Irons met their obligations to FmHA. There is a lack of substantial evidence the bank caused a disruption of the Irons' relation with FmHA leading to damages to the Irons.

The FmHA's security agreements required the Irons to obtain its prior written consent to an encumbrance of the collateral covered by the security agreements. The April 25, 1985, FmHA letter provided written consent to the bank's security interest. FmHA's security agreements did not require its prior written consent to the pledging of collateral not covered by its security agreements. There was no breach or termination of the relationship between the Irons and FmHA. *See Reihmann v. Foerstner,* 375 N.W.2d 677, 683 (Iowa 1985).

▇▇ The bank additionally objected to jury instructions stating the defendants could be liable for interference with contracts between the bank and FmHA rather than between the Irons and FmHA.

One who intentionally and improperly interferes with the performance of a contract between *another and a third person* by inducing or otherwise causing the third person not to perform the contract,

is subjected to liability to the other for pecuniary loss resulting from the failure of the third person to perform the contract.

*Reihmann v. Foerstner*, 375 N.W.2d at 683 (quoting Restatement (Second) of Torts § 766 (1977)) (emphasis added).

 The trial court erred by instructing the jury that a party may interfere in its own contract. Furthermore, no loss has been shown here. The Irons' relationship with FmHA has not been breached or terminated. Their relation continued up to the time of trial. The Irons have failed to establish several of the essential elements of intentional interference with a contract.

We determine there is a lack of substantial evidence to support the intentional interference with a contract verdict. We reverse the trial court on this issue.

### V. *Punitive Damages*

Because we find a lack of substantial evidence to support the Irons' legal claims, we reverse on the issue of punitive damages.

### VI. *Equitable Issues*

 The Irons cross-appealed the refusal of the trial judge sitting in equity to declare certain instruments and notes between the Irons and the bank null and void. The trial judge found the Irons had chosen their remedy at law and it was adequate under the circumstances.

Our review of this issue is de novo. Iowa R.App.P. 4.

We affirm the trial court's dismissal of the Irons' equitable claims. There is not substantial evidence supporting any of the Irons' legal claims. The record likewise does not reveal sufficient evidence to justify the cancellation by judicial decree of the Irons' obligations to the bank.

We affirm the trial court's ruling on the equitable issues.

We reverse the trial court on breach of fiduciary duty, fraudulent misrepresentation, breach of contract, and intentional interference with a contract, and on punitive damages.

The costs of this appeal are assessed to the appellees.

AFFIRMED IN PART AND RE-VERSED IN PART.

SACKETT, J., specially concurs without opinion.