**Charles CAGIN, D.O., Plaintiff,**

v.

**MCFARLAND CLINIC, P.C., Defendant.**

No. 4:04–cv–90078.

United States District Court, S.D. Iowa, Central Division.

May 14, 2004.

Kenneth L. Butters, Jr., Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis PC, Des Moines, IA, for Plaintiff.

Randall D. Armentrout, Nyemaster, Goode, Voigts, West, Hansell & O'Brien PC, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

On February 5, 2004, Plaintiff Charles Cagin, D.O. filed this action against Defendant McFarland Clinic, P.C. ("Clinic"), alleging breach of an employment agreement entered into by the parties as well as various torts arising out of the agreement between the parties. This case is now before the Court on Defendant's Motion to Dismiss Counts I, II, and V for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike Jury Demand under Fed.R.Civ.P. 12(f). Subsequent to Defendant's motion, Plaintiff dropped his demand for a jury trial and voluntarily dismissed Count II, a charge of negligent misrepresentation, from the suit. Consequently, Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim and Defendant's motion to strike Plaintiff's jury demand are moot. For the reasons set forth below, the remainder of Defendant's motion is **granted in part** and **denied in part**.

## I. Factual Background [1]

Plaintiff alleges that in the fall of 1999, the Clinic, located in Ames, Iowa, represented to him that it would start a cardiology department. (Am.Compl.¶ 10). In 1998 and 1999, the Clinic had not had a cardiology department, nor did it do any interventional cardiology work in Ames. (Am.Compl.¶ 9). In order to induce Dr. Cagin to become employed as an interventional cardiologist for Defendant in Des Moines, Iowa, Defendant represented to Dr. Cagin that it would hire an additional interventional cardiologist to assist Dr. Cagin in his Des Moines practice so that Dr. Cagin would not be on call twenty-four hours a day, seven days a week. (Am. Compl.¶ 10). Plaintiff was hired by Defendant in January, 2000. (Am.Compl.¶ 11). Defendant, however, did not hire an interventional cardiologist to aid Plaintiff until July, 2001, therefore Dr. Cagin was essentially on call twenty-four hours a day for seven days a week from January, 2000 until July, 2001. (Am. Compl. at ¶ 13).

Also in the fall of 1999, and unbeknownst to Dr. Cagin, Defendant entered into a contract with Midwest Cardiology Consultants, P.C. ("Midwest"). The Clinic's contract with Midwest provided that during the term of the agreement, from October, 1999 to October, 2001, the Clinic would not

---

1. Both parties submitted affidavits and appendices in conjunction with the briefing of Defendant's motion. As the Court is considering a motion to dismiss under Rule 12(b)(6), however, the Court disregarded these materials and they played no part in the Court's decision.

recruit or hire as an employee or independent contractor or otherwise retain the services of any cardiologist who, while performing services for McFarland, maintains his or her main office in Des Moines, Iowa; ... this prohibition shall not apply to Charles Cagin, D.O. (Am.Compl.¶¶ 11, 12). Defendant's agreement with Midwest contained a confidentiality provision, as did Defendant's employment agreement with Plaintiff. (Am. Compl.¶ 12). Thus, Dr. Cagin was not aware at the time he entered into his employment agreement with Defendant, and did not become aware until August of 2003, that Defendant's agreement with Midwest contained a provision which prohibited the Clinic from hiring another cardiologist in Des Moines until October, 2001. (Am.Compl.¶ 12).

Plaintiff pleads in Count I that Defendant's failure to disclose its agreement with Midwest constitutes fraudulent nondisclosure. Plaintiff alleges that the Clinic's concealment of the fact that it had also entered into a contract with Midwest providing that there would be no other cardiologists hired in Des Moines by the Clinic other than Dr. Cagin was done knowingly and purposefully, with the intent of inducing Plaintiff to enter into the employment agreement with the Clinic. (Am.Compl.¶ 14). Plaintiff claims that Defendant knew that this concealment was a misrepresentation. (Am. Compl.¶ 14). Moreover, Plaintiff alleges that Defendant knew that its agreement with Midwest effectively meant that Plaintiff would not have any backup coverage or call coverage. (Am.Compl.¶ 14). Plaintiff would not have entered into the employment agreement with Defendant, taking a cut in salary to do so, if he would have known at the time he entered into the agreement that there was going to be no other interventional cardiologist hired by Defendant to reside and work in Des Moines to give Plaintiff effective backup and call coverage. (Am.Compl.¶ 15).

Count V of the Amended Complaint alleges that the Clinic breached its fiduciary duty to Plaintiff. Plaintiff pleads that he placed his confidence in the Clinic regarding the receipt of fair and adequate compensation, and that the Clinic had dominion and influence over him in their business relationship. (Am.Compl.¶ 32). The following actions are cited by Plaintiff as establishing a breach of the Clinic's alleged fiduciary duty to him:

a. Failure to hire an interventional cardiologist residing in and practicing in Des Moines to assist Plaintiff in his Des Moines practice;

b. Failure to honor and live up to the agreement that the cardiologists in the practice would be compensated equally on a pool basis;

c. Failure to provide agreed to backup and call coverage for Plaintiff in Des Moines;

d. Mishandling of Plaintiff's billings with third party payors;

e. Effectively undermining Plaintiff's cardiology practice in Des Moines by sending patients that could or should have been seen by Plaintiff to cardiologists not employed by the Defendant;

f. Effectively destroying Plaintiff's Des Moines practice by failing to timely provide an interventional cardiologist to assist Plaintiff in Des Moines, failing to provide agreed backup and call coverage and allowing Plaintiff's overhead percentage to be so high that Plaintiff was left with no alternative but to leave Defendant's employment, resulting in Plaintiff's loss of the cardiology practice that he had built up for twenty-one

years prior accepting employment with Defendant.

(Am.Compl.¶¶ 29, 33).

## II. Standard for Rule 12(b)(6) Motion to Dismiss

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent standard ... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 545–46 (8th Cir.1997) (quoting *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982) (citation omitted)).

In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes,* 122 F.3d at 546. Finally, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995). This deferential standard of review is, however, modified by the heightened pleading requirement of Fed. R.Civ.P. 9(b) that fraud be pleaded with particularity.

## III. Discussion

### A. Count V: Breach of Fiduciary Duty

 The Iowa Supreme Court has adopted the general definition of a fiduciary relationship as stated in the Restatement (Second) of Torts § 874:

> A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.

*Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986). Some relationships necessarily give rise to a fiduciary relationship, such as attorney and client, guardian and ward, principal and agent, and executor and heir. *Id.* at 696. Whether a fiduciary relationship exists in other contexts must be determined on a case-by-case basis. *Id.* This question is one that can properly be resolved as a matter of law by the court. *Weltzin v. Cobank,* 633 N.W.2d 290, 292 (Iowa 2001). In this case, Plaintiff asserts that a fiduciary relationship arose out of his negotiation and employment agreement with Defendant. Defendant, on the other hand, argues that even construing the facts alleged in the Amended Complaint in the light most favorable to

the Plaintiff, Plaintiff has failed to establish that a fiduciary relationship existed between the parties.

The Iowa Supreme Court has recognized that an employee has a fiduciary duty of loyalty to an employer to maintain the secrecy of the employer's trade secrets and proprietary information, *Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 648 (Iowa 1995), and has suggested that a breach of fiduciary duty claim would lie against a former employee who lures away a former employer's employees. *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 599 (Iowa 1999). Additionally, in *Kendall/Hunt Publishing Co. v. Rowe*, 424 N.W.2d 235 (Iowa 1988), the Iowa Supreme Court found a limited fiduciary duty by former employees not to disclose confidential information about their former employers obtained during employment. The Court is unable to find, and the parties have not cited, any cases in which an Iowa court has recognized the existence of a general fiduciary duty between an employer and an employee. Other courts that have considered whether a general fiduciary duty exists between employer and employee have rejected the proposition. *See, e.g., Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (granting motion to dismiss and holding under California law that " 'no presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee; rather, additional ties must be brought out in order to create the presumption of a confidential relationship between the two' "); *Brown v. Dorsey & Whitney, L.L.P.*, 267 F.Supp.2d 61, 80 (D.D.C.2003) (holding that "an employer-employee relationship is not a fiduciary relationship"); *Onanuga v. Pfizer, Inc.*, No. 03–Civ–5405, 2003 WL 22670842, at *3 (S.D.N.Y. Nov.7, 2003) (granting motion to dismiss negligent misrepresentation claim holding that an "employer-employee relationship is not

fiduciary in nature, and without alleging further facts from which to infer such a relationship existed that cause of action must be dismissed").

In an attempt to extend the special duties inherent in a fiduciary relationship to the relationship between himself and Defendant, Plaintiff cites the following definition from *Black's Law Dictionary*, which was approved by the court in *Kurth:*

> "[fiduciary relationship is a] very broad term embracing both technical fiduciary relations and those in formal relations which exist wherever one man trusts in or relies upon another. One founded on trust or confidence reposed by one person in the integrity and fidelity of another. A 'fiduciary relation' arising whenever confidence is reposed on one side, and dominion and influence result on the other; the relation can be legal, social, domestic or merely personal. Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other."

380 N.W.2d at 695–96 (quoting *Black's Law Dictionary* 564 (5th ed.1979)). Plaintiff claims that "Defendant had a duty to act for the benefit of Plaintiff upon matters within the scope of their relationship" and that Plaintiff "placed his confidence in Defendant as to being fairly and adequately compensated and Defendant had dominion and influence over Plaintiff in their business relationship." (Am.Compl.¶¶ 31, 32).

█ The Court disagrees with Plaintiff's conclusory characterization of the relationship between himself and Defendant. Plaintiff has not alleged sufficient facts about his relationship with Defendant to support his claim that a fiduciary duty existed. Nothing in the Amended Complaint suggests that the interaction between Dr. Cagin and the Clinic went beyond a typical arms-length negotiation and

a standard employment arrangement. Stated differently, the pleadings do not describe a relationship that would be analogous to the kind of circumstances which normally give rise to a presumption of a fiduciary duty. There was nothing about the relationship that gave rise to a special duty on the part of the Clinic to disclose information to Plaintiff or to act for or give advice for the benefit of Plaintiff. Furthermore, the "duty" Dr. Cagin claims is being breached is Clinic's duty to ensure that he is "fairly and adequately compensated." This is a duty of the Clinic that stems directly from the Employment Agreement; it does not arise from an independent fiduciary relationship. No fiduciary relationship existed between the parties in this case, therefore Plaintiff has failed to state a claim for breach of fiduciary duty and Count V of the Amended Complaint is dismissed with prejudice.

### B. Count I: Fraudulent Nondisclosure

The Court's deferential standard of review for motions to dismiss must take into consideration the special fraud pleadings requirements of Fed.R.Civ.P. 9(b). *Martino–Catt v. E.I. duPont de Nemours & Co.*, 213 F.R.D. 308, 314 (S.D.Iowa 2003) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir.1997)). Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The particularity requirement of Rule 9(b) requires a party alleging a fraud claim to plead "the who, what, when, where and how: the first paragraph of any newspaper story." *Parnes*, 122 F.3d at 549.

■■■ To demonstrate fraud under Iowa law, Plaintiff must establish the following: (1) a representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage. *Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562, 565 (Iowa 1987); *Cornell v. Wunschel*, 408 N.W.2d 369, 374 (Iowa 1987); *Beeck v. Kapalis*, 302 N.W.2d 90, 94 (Iowa 1981). The plaintiff's reliance must also be shown to be justifiable. *Beeck*, 302 N.W.2d at 94. The representation or promise, however, need not be an affirmative misstatement, as fraud may also arise from a failure to disclose material facts. *Sinnard v. Roach*, 414 N.W.2d 100, 105 (Iowa 1987) (citation omitted). Additionally, in order to prevail on a claim of fraudulent nondisclosure, Plaintiff must establish that the Clinic had a legal duty to communicate the information in its contract with Midwest to Plaintiff. *See Irons v. Community State Bank*, 461 N.W.2d 849, 854 (Iowa Ct.App.1990).

Defendant argues that Plaintiff's Amended Complaint fails to state a claim for fraudulent nondisclosure because Defendant had no duty to disclose the information allegedly withheld, because the information that Plaintiff alleges was not disclosed was not true, and because Plaintiff cannot prove that he suffered damages as a result of Defendant's actions.

### 1. Duty to Disclose

■■■ This Court's finding that the relationship between Plaintiff and Defendant did not give rise to a fiduciary duty does not preclude the possibility that a duty to disclose material facts which relate to a matter known by the Defendant may exist on alternate grounds. Indeed, such a duty can also arise from "inequality of condition and knowledge, or other circumstances shown by a particular fact situation." *Irons v. Community State Bank*, 461 N.W.2d 849, 854 (Iowa Ct.App.1990). Under the circumstances of this case, the Court finds that Dr. Cagin has sufficiently pleaded that a legal duty exists by alleging that the confidentiality provision in the

Clinic's agreement with Midwest Cardiology as well as the Defendant's unique knowledge of that agreement and provision created a circumstance of inequality of condition and knowledge which had a material bearing on the circumstances of Dr. Cagin's negotiations with the Clinic. The Court concludes that, taking the facts alleged in the Amended Complaint as true, as must be done when evaluating a motion to dismiss, this inequality of condition and knowledge could have created a duty on the part of Defendant to disclose the contractual agreement between Defendant and Midwest Cardiology concerning Defendant's inability to hire another cardiologist whose main office was to be in Des Moines, Iowa.

## 2. False Representation

As an initial matter, while both Plaintiff and Defendant refer at various points in their briefing on this motion to Plaintiff's claim for fraudulent disclosure, the Amended Complaint actually claims fraudulent nondisclosure. That is, Plaintiff has pleaded that Defendant's failure to disclose the fact that it had entered into a contract with Midwest prohibiting the hiring of another cardiologist with a main office in Des Moines constitutes fraud. In the section of the Amended Complaint titled "Count I—Fraudulent Nondisclosure," Plaintiff does allege that

Defendant, to induce Plaintiff to become employed as an interventional cardiologist for Defendant in Des Moines, Iowa, represented to Plaintiff that it would start a cardiology department and that Defendant would hire an additional interventional cardiologist to assist Plaintiff in his practice in Des Moines so that Plaintiff would not be on call twenty four hours a day, seven days a week.

This allegation, however, rather than transforming Plaintiff's claim of fraudulent nondisclosure into one of fraudulent disclosure, merely demonstrates the materiality of the information that Defendant failed to disclose.

■ Defendant challenges the sufficiency of Count I of the Amended Complaint for its failure to allege a false representation, arguing that Plaintiff can provide no evidence to show that the alleged representation to Plaintiff that Defendant "would hire an additional interventional cardiologist to assist plaintiff in his practice in Des Moines" was not true. As discussed, however, Defendant's alleged promise to hire another cardiologist whose main office would be in Des Moines is not what Plaintiff challenges as fraud. Rather, Plaintiff challenges Defendant's failure to disclose that it had entered an agreement prohibiting Defendant from hiring another cardiologist with a main office in Des Moines until October, 2001. Where the fraud alleged is based upon nondisclosure, rather than upon a false disclosure, a plaintiff is not required to show a false representation. The required showing is that the defendant failed to disclose material facts. *See Irons,* 461 N.W.2d at 854; *Sinnard,* 414 N.W.2d at 105 (Iowa 1987). Plaintiff has clearly made such a showing. The fact that Defendant purportedly hired another interventional cardiologist in July, 2001 does not obviate the fact that Defendant failed to disclose that at the time it entered into the employment agreement with Plaintiff it was under contract with Midwest not to hire another cardiologist from October, 1999 to October, 2001.

## 3. Damages

The Amended Complaint alleges that Dr. Cagin was required to be on call twenty-four hours a day, seven days a week and took a cut in salary in order to enter the Employment Agreement. The prayer for relief requests actual damages, compensatory damages, punitive damages, attor-

ney's fees and costs of the action deemed just by this Court. Defendant argues that the Amended Complaint does not allege facts sufficient to prove actual damages for fraudulent nondisclosure.

At the pleading stage, a plaintiff need not specify an actual amount of damages or the precise basis on which damages should be determined. A general allegation of damages and causation, such as the Amended Complaint here alleges, is enough. *Franklin High Yield Tax–Free Income Fund v. County of Martin, Minnesota,* 152 F.3d 736, 740 (8th Cir. 1998); *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1259 (2d ed.1990). Plaintiff's failure to plead the specific amount of his alleged damages is not a pleading deficiency.

Accordingly, Defendant's motion to dismiss as it relates to Plaintiff's claim of fraudulent nondisclosure is denied.

## IV. Order

For the reasons discussed, Defendant's Motion to Dismiss is hereby granted as it relates to Count IV of the Amended Complaint and denied as it relates to Count I of the Amended Complaint. Accordingly, Count IV is hereby dismissed with prejudice.

IT IS SO ORDERED.